LOUIS HUTT *et al.*

*v.*

THE CITY OF CHICAGO.

*Filed at Ottawa March 29, 1890.*

1. SPECIAL ASSESSMENTS—*ordinance for extension of street—description.* A section of an ordinance for the extension of a street, after describing the proposed street and the property sought to be taken, ·concluded, "in accordance with the plan hereto annexed:" *Held,* that by this clause the plan mentioned was to be treated as a part of the ·ordinance, and that such ordinance was the foundation of a proceeding to assess the property benefited, for the purpose of raising means to pay .the condemnation money for the land taken.

132   352
134   661

132   352
140   222
140   412
140   442

132   352
147   334

132   352
154   163
155   421

132   352
161   291

132   352
158   12

132   352
162   297
162   384
162   508

132   352
166   86

132   352
·189   111

132   352
201   ²627

2. SAME—*basis for estimating benefits—future contingent improvements.* Whatever may be the effect of the act ordered to be done, in respect of a proposed public improvement, on the market value of property, is a proper subject for consideration in assessing benefits. All natural and probable results to flow from the improvement ordered may properly be considered. Future action of the city in ordering additional improvements can not be regarded as a natural or probable consequence to flow from the improvement which is ordered. The benefits to be assessed must be confined to those arising from the improvement ordered.

3. Where an ordinance for the extension of a street, which is to cross a river, makes no provision for a bridge over the river, and orders none to be built, it is improper to assess the property along such proposed street for benefits it may derive from the street with a bridge over the river, which may or may not be ordered and built.

APPEAL from the Superior Court of Cook county; the Hon. ELLIOTT ANTHONY, Judge, presiding.

This is an appeal from a judgment of the Superior Court of Cook county, confirming an assessment levied to raise the amount necessary to pay the compensation and damages awarded for property taken or damaged for the extension of South Canal street, from the southerly line of Lumber street to the northerly line of Archer avenue.

The city council of Chicago, acting under the provisions of article 9 of the general Municipal Incorporation law, under which the city is organized, enacted an ordinance on March 15, 1886, for the extension of Canal street, as follows:

"*Be it ordained by the city council of the city of Chicago:*

"Section 1. That South Canal street be and the same is hereby ordered extended from the southerly line of Lumber street to the northerly line of Archer avenue, by condemning therefor," (here follows a description of the property sought to be condemned,) "in accordance with the plan hereto annexed.

"Sec. 2. That said improvement shall be made and the cost thereof paid for by a special assessment, to be levied upon the property benefited thereby, to the amount that the same may be legally assessed therefor, and the remainder of such cost to

be paid by general taxation, in accordance with article 9 of an act of the General Assembly of the State of Illinois, entitled 'An act to provide for the incorporation of cities and villages,' approved the 10th day of April, A. D. 1872, and adopted by the common council of said city by ordinance passed the 2d of September, A. D. 1872. `

"Sec. 3. That the counsel of the corporation be and is hereby directed to file a petition in the Superior Court of Cook county, Illinois, in the name of the city of Chicago, praying that 'the just compensation to be made for private property to be taken or damaged for said improvement or purpose specified in this ordinance shall be ascertained by a jury,' and to file a supplemental petition in accordance with the provisions of section 53 of said article 9.

"Sec. 4. It is the intention of this ordinance to open said street so that there may be hereafter provided a bridge at said street across the South Branch of Chicago river, connecting the South and West Divisions of the city.

"Sec. 5. This ordinance shall be in force from and after its passage."

On the 9th day of April, after the passage of the ordinance, the city filed its petition in the Superior Court, praying that the just compensation to be made for private property to be taken or damaged for the improvement or purpose specified in the ordinance should be ascertained by a jury. Such proceedings were had under the petition, that a jury, February 9, 1887, returned a verdict, in which the compensation to the owners of property was fixed at the sum of $178,271.98, upon which a judgment was rendered. After this judgment had been rendered, the city, on February 9, 1887, filed a supplemental petition, under section 53, of article 9, praying for a special assessment for the purpose of raising an amount sufficient to pay the compensation which had been awarded, and costs of the proceeding. Commissioners were appointed, under section 24, of article 9, to examine the locality where

the proposed improvement was to be made, and to estimate what proportion of the total cost of such improvement would be of benefit to the public, and what proportion thereof would be of benefit to the property to be benefited, and apportion the same so that each should bear its relative equitable proportion, and assess the amount found to be of benefit to the property upon the several lots and tracts of land, in the proportion in which they would be severally benefited by the improvement. The amount apportioned to and assessed against the city for public benefit, as appears from the assessment roll, was $9165.81, and the amount apportioned to and assessed against the several lots and tracts of land deemed specially benefited was $174,150.37. Property owners representing property assessed to the amount of about $50,000 appeared, and filed various objections to the confirmation of the assessment, which were all overruled, and a trial before a jury resulted in a judgment confirming the assessment.

Messrs. JENKINS & HARKNESS, Messrs. WILSON & MOORE, Mr. WILLIAM M. JOHNSTON, Mr. JOSEPH N. BARKER, Mr. JOHN W. WAUGHOP, Messrs. MASON BROS., Mr. WILLIAM B. KEEP, and Messrs. SMITH & PENCE, for the appellants.

Messrs. RUBENS & MOTT, and Mr. EDWARD ROBY, for the appellants Buck and Sheriff.

Messrs. OSBORN & LYNDE, for the Chicago and Western Indiana Railroad Company.

Mr. WILLIAM J. AMMEN, for the appellant Harding.

Mr. FRANCIS ADAMS, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

During the trial, exceptions were taken to the ruling of the court on various questions raised and decided; but in the view we take of the record, many of the questions become unimport-

ant, and in the decision of the case we shall confine ourselves to the consideration of such matters as we regard of controlling importance.

The ordinance passed by the city council is the foundation of this proceeding. Section 1 of the ordinance provides that South Canal street shall be extended from the southerly line of Lumber street to the northerly line of Archer avenue, "in accordance with the plan hereto annexed." By this last clause of the ordinance the plan mentioned must be regarded as a part thereof. Upon an examination of the plan annexed to the ordinance, it will be found that the extension of Canal street from Lumber street to Archer avenue requires the proposed street to cross a navigable stream—the Chicago river. From an inspection of the plan, and from the language of the ordinance itself, it is apparent that the improvement authorized by the ordinance was one extending over and across the Chicago river, as it would be impossible to extend the street from the one point indicated, to the other, without crossing the river. It will, however, be observed, that in the ordinance no provision whatever was made for crossing the river. Whether the crossing should be by bridge, by boat, or by some other means, the ordinance is silent.

As has been seen, this proceeding was instituted to assess benefits to land owners along the line of the proposed improvement, for the purpose of paying for the land condemned which was taken for the street sought to be opened, and the main question presented by the record is, whether the theory upon which the case was tried and the benefits were assessed to property owners was correct or incorrect. The commissioners who were appointed to assess benefits to property owners made the assessment on the theory that a bridge would be constructed by the city across the river, and all the witnesses called by the city to sustain the assessment predicated their judgments of benefits to property upon the hypothesis that a bridge would be constructed across the river, as shown by their

evidence.   F. C. Vierling says "that the benefits that I have
testified to here, all depend upon the erection of a bridge."
E. C. Huling: "I base the benefits largely from the fact that
a bridge would be built."   John Wain bases his idea of bene-
fits on the expectation of the street being opened all the way
by a bridge.   E. A. Cummings states that his testimony is
based on the expectation that a bridge will be built across the
river.   John C. McCord states that in order to make the bene-
fit appreciable there will have to be a bridge.   William Kaspar
says:  "A bridge is necessary to this improvement.   If there
is no bridge there will be no benefit."   The witnesses called
by the objectors agree with those introduced on behalf of the
city, that the improvement made by the proposed extension of
the street will be of no benefit to the land owners assessed un-
less a bridge should be constructed across the river.   Indeed,
upon this point there was no substantial conflict or disagree-
ment in the evidence.   Not only in the admission of evidence,
but in the instructions, the theory seemed to be adopted that
the erection of a bridge in the future might be considered in
estimating benefits.

Among other instructions, the appellants asked the court to
give the following:

"The jury are instructed, that in estimating the benefits
that may accrue to the premises of the objectors, or any of
their premises, by the proposed improvement, they should
limit such estimates of benefits to such benefits as are derived
from the improvement described in the ordinance, and they
are not at liberty to speculate as to the benefits that may in
the future be conferred upon any of said premises by any other
public improvement that may be constructed."

The court, however, refused to give the instruction as asked,
but modified it by striking out all after the word "ordinance," in
the fifth line.   The court also refused the following instruction:

"The jury are instructed, that benefits by the proposed im-
provement can not be predicated upon the uncertainties of the

future action of the city council in providing for the construction and building of a bridge at Canal street, but the benefits in this case must flow directly from the improvement proposed, without reference to such action of the city council in reference to the construction of said bridge."

Also the following was refused:

"If the jury believe, from the evidence, that the premises of the objectors will not be benefited by the proposed improvement unless a bridge should be constructed upon the line of such improvement across the South Branch of the Chicago. river at Canal street, then their verdict in this case should be for the objectors."

Other instructions of a similar character were refused. Indeed, it is apparent, from the record, that the .case was presented to the jury, by the admission of evidence and in the instructions, upon the theory, that although the ordinance made no provision for a bridge across Chicago river, yet the fact that at some future time a bridge might be erected, might be taken into consideration in estimating the benefits which would be received by the land owners by the proposed improvement, and if this theory was erroneous, the judgment will have to be reversed.

It is said, however, in the argument of counsel for the city, that the probable and natural consequences of an improvement ordered may be, and almost uniformly are, taken into consideration in determining the effect of the improvement on the values of private property. We find no fault with this position. Whatever may be the effect on the market value of property, if the act ordered to be done is a proper subject for consideration, all natural and probable results to flow from the improvement ordered may properly be considered in estimating benefits. But the trouble here is, no bridge has ever been ordered. The improvement ordered is the extension of a street, without any provision whatever being made for the erection of a bridge; and if it may be anticipated that at some future

time a bridge will be erected by the city, and thus benefits flow to property owners, upon the same principle you may anticipate that some other improvement may be made on the line of the street which will also be of benefit to property owners, and assess that anticipated benefit against their property. We do not think the future action of the city of Chicago in ordering additional improvements can be regarded either as a probable or natural consequence to flow from the improvement ordered in this case. The ordinance here provides for the extension of a street. The extension requires the taking of land, and the benefits to be assessed must be confined to the improvement ordered. Section 24, of article 9, makes it the duty of the commissioners, in making the assessment, to apportion and assess the amount found to be of benefit to the property, upon the several lots, blocks and tracts of land, in the proportion in which they will be severally benefited by such improvement, provided no lot or tract shall be assessed a greater amount than it will be actually benefited. We know of no principle under which it can be held that the language, "actually benefited," can refer to improvements not ordered, and that may never be ordered. The lands of appellants were assessed benefits derived from the erection of a bridge across the Chicago river which may never be built—a bridge that has not been ordered, and may never be ordered. We do not think such an assessment was contemplated by the statute. The purpose of the ordinance here was to open the street, not to improve it. Doubtless, the ultimate object in view was to make the extended street a thoroughfare; but it will be ample time to assess appellants' property for benefits to be derived from the construction of sidewalks, the curbing and paving of the street, the erection of a bridge, and other like matters, when such improvements are ordered by the proper authorities. When the city of Chicago deems it wise to improve the street by the erection of a bridge, the nature and character and cost of the structure will be determined, and then it can,

with some degree of accuracy, be determined what benefit appellants' property will receive from such an improvement, and it will be time enough then to assess their property with benefits to be derived therefrom.

Other questions have been argued, but it will serve no useful purpose to consider them. The question as to the erection of a bridge we do not regard as one germane to the inquiry before the jury, and the court erred in refusing the instructions relating to that question, heretofore alluded to.

The judgment of the Superior Court will be reversed, and the cause remanded.

*Judgment reversed.*