JOHN L. WALKER *et al.*

*v.*

THE CITY OF AURORA.

*Filed at Ottawa January 18, 1892.*

1. SPECIAL ASSESSMENT — *how made — certificate of commissioners.* Under an ordinance for a system of sewerage, to be paid for by special assessments upon the property benefited and by general taxation, the commissioners certified that they estimated what proportion of the total cost would be of benefit to the public and what proportion would be of benefit to contiguous property, and apportioned the same between the city and such property, so that each should bear its equitable proportion; that the amounts assessed by them as special benefits to each lot, etc., were shown upon the assessment roll; that they apportioned and assessed the amount found to be of benefit, upon the several lots, etc., in the proportion in which they will severally be benefited by the improvement, and that no lot, etc., was assessed a greater amount than it would be actually benefited: *Held,* that such an assessment was in conformity with the statute.

2. SAME — *according to frontage.* While a special assessment made on the basis of frontage, merely, and without regard to special benefits, would be invalid, there is no rule of law precluding the commissioners from taking into consideration the number of feet frontage of the several lots upon the street or improvement as an element in their ascertainment of benefits.

3. SAME—*must correspond to benefits.* The fact that the commis-sioners assess against each lot the exact cost of the improvement in front of the same, or the fact that the several amounts assessed against the several lots are in exact proportion to the frontage of said several lots, will not, of itself, vitiate the assessment, provided it appears that the special benefits are equal to such cost and in proportion to such frontage.

4. SAME—*for sewerage system—before water mains are laid.* A special assessment of benefits on lots to pay for the construction of a system of sewerage is not invalid merely because the water mains of the city water-works have not been extended along the streets upon which portions of the property assessed for sewerage purposes are located, provided such lots are benefited to the amount assessed thereon, by the improvement.

5. SAME—*sufficiency of petition to county court.* The statute merely requires that the petition of the city to the county court for a special assessment "shall be in the name of the corporation, and shall recite the ordinance for the proposed improvement and the report of such commission, and shall pray that the cost of such improvement may be assessed in the manner prescribed by law." Therefore a petition is not fatally defective for the reason that it does not allege, in direct terms, that the commissioners were "competent persons," or for the reason it contains no direct allegation that such three persons were appointed commissioners.

6. SAME—*sufficiency of clerk's certificate of passage of ordinance for.* An ordinance for a public improvement was passed July 7, 1890, and on July 21, 1890, the estimate of the cost of the improvement was approved by the city council. The city clerk's certificate was, that the annexed was a true copy of the ordinance; also, a copy of estimate of cost, with order of approval, "which was duly passed by the city council of said city on the 7th day of July, 1890." The certificate further stated "that the ordinance was duly approved and signed by the mayor of said city on the 9th day of July, 1890:" *Held,* that the words "which was duly passed," etc., had reference to the ordinance, and not to the order of approval.

7. It is not material that the city clerk does not certify that he is the custodian or keeper of the report of the commissioners appointed to estimate the cost of the proposed improvement, and of the record which shows the order of its approval, as the statute declares him to be such keeper, and makes copies of all papers duly filed in his office, and transcripts from the records and files in his office, certified by him under the corporate seal, evidence in all courts, in like manner as if the originals were produced.

8. SAME—*city council judge of competency of commissioners.* The city council are, at least primarily, the judges of the competency of the

persons to be appointed by them to estimate the cost of the proposed improvement; and in the absence of any allegation or proof to the contrary, it will be presumed that they performed their duty, and that the persons designated as commissioners were "competent persons."

9. SAME—*filing objections—waiving defects in notice.* Where the owners of property specially assessed for a proposed public improvement appear and file objections to the confirmation of the assessment on the merits, they thereby waive any and all defects in the notice of the application for judgment.

10. SAME—*ordinance providing for sewer emptying into lake or river—no defense to special assessment.* Section 277 of the Criminal Code, prohibiting the pollution of rivers, etc., is not to be construed as absolutely prohibiting cities and towns located upon the shores of lakes or banks of rivers from emptying their sewers into such lakes or rivers, and the fact that an ordinance of a city for a system of sewerage provides for the discharge of the sewage into a river, constitutes no defense to a proceeding by the city to collect special assessments made to defray the cost and expense of the work.

11. AMENDMENT—*certificate of publication—presumption.* Where the record shows that after hearing the evidence of a witness on a motion to amend a certificate of publication, the court granted the motion, but fails to preserve the evidence, it will be presumed that the evidence was sufficient to justify the action of the court in allowing the amendment.

APPEAL from the County Court of Kane county; the Hon. EDWARD C. LOVELL, Judge, presiding.

Messrs. ALSCHULER & MURPHY, for the appellants:

In a summary proceeding to divest a man of his property, the statutory authority must be strictly pursued to give the court jurisdiction. *Chicago* v. *Railroad Co.* 20 Ill. 286; *Chicago* v. *Wright,* 32 id. 192; Dillon on Mun. Corp. 944.

As to the sufficiency of notice, and the proof thereof, see *Murphy* v. *Peoria,* 119 Ill. 509; *Rue* v. *Chicago,* 66 id. 256; *Honore* v. *Chicago,* 62 id. 305; *Brown* v. *Chicago,* 62 id. 289; *Rich* v. *Chicago,* 59 id. 286; Dillon on Mun. Corp. par. 606.

The city has no right to commit a public nuisance by emptying its sewers into the Fox river and thereby pollute its waters. Rev. Stat. chap. 38, secs. 277, 278; *Morris* v. *Worcester,* 138 Mass. 389; *Middlesex Co.* v. *Lowell,* 149 id. 509.

WALKER *et al.* *v.* CITY OF AURORA.          405

Brief for the Appellee.   Opinion of the Court.

The assessment is levied on the frontage plan, and is therefore void.   Const. 1870, art. 9, sec. 9 ; *Guild* v. *Chicago,* 82 Ill. 472 ; *Chicago* v. *Larned,* 34 id. 203 ; *Ottawa* v. *Spencer,* 40 id. 211 ; *Holbrook* v. *Dickenson,* 46 id. 285 ; *St. John* v. *East St. Louis,* 50 id. 92 ; *Creote* v. *Chicago,* 56 id. 428 ; *Lee* v. *Ruggles,* 62 id. 427 ; *Bibel* v. *People,* 67 id. 172.

Mr. C. I. McNETT, for the appellee :

Notice of the application is waived by the party appearing and contesting on the merits.   *Mix* v. *People,* 106 Ill. 425 ; *Frew* v. *Taylor,* 106 id. 159 ; *People* v. *Sherman,* 83 id. 165 ; *Quick* v. *River Forrest,* 130 id. 323.

Under the presumption of the discharge of official duty, it devolves upon the defendants to prove that the commissioners appointed were not competent.   *Levy* v. *Chicago,* 113 Ill. 650 ; *Chicago* v. *Sherwood,* 104 id. 549 ; *Fagan* v. *Chicago,* 84 id. 227.

The proof of the ordinance and approval of the estimate of cost was sufficient.

The emptying of the sewage into the river will not create a nuisance.

The commissioners may consider the frontage and character of the lots in determining the amount they will be benefited.

Mr. JUSTICE BAKER delivered the opinion of the Court :

This is an appeal from a judgment of confirmation rendered by the county court of Kane county in the matter of a special assessment for the construction of a connected system of sewers in District No. 1, west, in the city of Aurora.   At the time fixed for the filing of objections to said assessment, the appellants appeared, and interposed some forty-four objections, in writing, to the same.   The court, at the hearing, overruled the objections and in all things confirmed the assessment, and thereupon this appeal was prosecuted.

It is claimed that notices of the assessments and application for judgment were not given as required by law, and that

the trial court erred in permitting the certificate of publication to be amended. It is conceded that the affidavit of mailing notices is in literal compliance with the requirements of the statute, but the contention is, that the evidence introduced on the trial shows the affidavit to be in substance false. Waiving the consideration of other answers that are made to this claim, it is sufficient to say that the record shows that the appellants appeared at the trial, and contested the assessments on their property upon the merits. This was a waiver of all irregularities and defects in respect to notice. Where the owners of premises specially assessed for a proposed public improvement appear and file objections to the confirmation of the assessment, they thereby waive any and all defects in the notice of application for judgment. (*Murphy* v. *City of Peoria,* 119 Ill. 509; *Quick* v. *Village of River Forest,* 130 id. 323.) This being so, it would seem to be immaterial, in respect to appellants, whether the certificate of publication was amended or not. But be this as it may, it was almost or quite evident from the certificate itself that there was a clerical error in its date, and the record shows that the court, having heard the evidence of Charles I. McNett, upon the motion to amend, allowed said certificate to be amended by changing its date from August 8, 1890, to September 8, 1890, "to correspond with the facts," and as the testimony of McNett is not preserved in the record, it must be presumed that it was sufficient to justify the finding of the court that a clerical error had been committed, and that the certificate was in fact made on September 8.

The ordinance providing for the proposed improvement was annexed to the petition filed by the city, and was expressly made a part of said petition. It clearly appeared from section 6 of said ordinance that R. W. Gates, R. Burke and F. Fauth were appointed by the council as commissioners to make an estimate of the cost of the improvement. It is alleged in the petition, "that the commissioners appointed by said city council to make an estimate of the cost of the improvement

contemplated by said ordinance, heretofore, to-wit, on the 21st day of July, 1890, made a report to said city council, which was afterwards approved by said city council, estimating such cost at $95,000, a true copy of which report, marked 'Exhibit B,' is annexed hereto and made part hereof." Said "Exhibit B" so annexed is signed by said Gates, Burke and. Fauth, as commissioners. The statute provides that the city council shall appoint three of its members, or any other three competent persons, to make an estimate of the cost of the improvement contemplated by the ordinance, etc.; and in respect to the petition to be filed in the county court, the statute merely provides that it "shall be in the name of the corporation, and shall recite the ordinance for the proposed improvement and the report of such commission, and shall pray that the cost of such improvement may be assessed in the manner prescribed by law." The council are, at least primarily, the judges of the "competency" of the persons to be appointed by them, and in the absence of any allegation or proof to the contrary, it will be presumed that they performed their duty in that behalf, and that the three persons designated as commissioners were "competent persons." The claims that the petition is fatally defective in that it does not allege in direct terms that Gates, Burke and Fauth were "competent persons," and that it is void for uncertainty, in that it contains no direct allegation that said three persons were appointed commissioners, are not, in our opinion, well founded. The petition is in literal compliance with the statute, and contains all that the statute requires it to contain. The facts that Gates, Burke and Fauth were duly appointed commissioners, and made a report, as such commissioners, of the estimated cost of the improvement, sufficiently appear from the allegations of the petition which we have above quoted, and from "Exhibits A" and "B," which are expressly made parts of the petition.

It is urged that the record does not show that the city council approved the report of the commissioners appointed to

make an estimate of the cost of the improvement, that the clerk in his certificate does not state that he is entrusted with the safe-keeping of said report, and that said certificate refers to an order of approval of the date of July 7, 1890, which is not to be found in the record, and not to the order of approval of the date of July 21, 1890, which does appear therein. It is not material that the clerk does not certify that he is the custodian or keeper of the report of said commissioners and of the record which shows the order of approval, for the statute expressly provides that the city clerk shall keep the corporate seal and all papers belonging to the city, and shall keep a full record of the proceedings of the city council, and that copies of all papers duly filed in his office, and transcripts from the records and files of his office, certified by him under the corporate seal, shall be evidence in all courts in like manner as if the originals were produced. (1 Starr & Curtis' Stat. chap. 24, sec. 82.) The authentication made by the clerk applies not only to the copy of the ordinance annexed, but also certifies to the "copy of estimate of cost, with order of approval." No claim is made that the order of approval of the date of July 21, 1890, if properly certified, is not amply sufficient. The contention is, that the words "which was duly passed by the city council of said city on the 7th day of July, A. D. 1890," have reference to the order of approval, and it must be conceded that the certificate is inartificially drawn and is somewhat ambiguous. But when the words above quoted, and the further statement found in the certificate "that the ordinance was duly approved, and signed by the mayor of said city, on the 9th day of July, A. D. 1890," are read in the light of the dates of the passage and approval of the ordinance and of the order, respectively, as they appear upon said ordinance and said order as certified, it is manifest that the words "which," etc., above quoted, have reference only to the copy of the ordinance, and have no reference whatever to the copy of the order of approval.

The discharge of the proposed system of sewerage is into Fox river, and it is objected that such discharge would contaminate the waters of the stream, and be a public nuisance, and in violation of paragraphs 2 and 3 of section 277 of the Criminal Code, (1 Starr & Curtis' Stat. chap. 38, sec. 277,) one of which paragraphs provides that it is a public nuisance to throw or deposit any offal or other offensive matter, or the carcass of any animal, in any water-course, lake, pond, spring, well or common sewer, street or public highway, and the other, that it is a public nuisance to corrupt or render unwholesome the water of any spring, river, stream, pond or lake, to the injury or prejudice of others. It would be unreasonable, and would lead to seriously injurious results, if these statutory provisions were construed as showing a legislative intention to absolutely prohibit cities and towns located upon the shores of lakes or banks of rivers from emptying their sewerage into such lakes or rivers. In view of the opinions expressed by expert witnesses, and of the quantity of water flowing in Fox river, the rapidity of its current, the tendency of the river to purify itself, the dilution of the sewerage by surface and spring water and water from the water-works before it reaches the mouth of the sewer, we think that the pollution of the water of the river would be very inconsiderable, and perhaps even barely perceptible near the mouth of the sewer. It is suggested that the sewerage will be a nuisance to the cities and towns on Fox river below Aurora. If this should turn out to be so, and if the discharge of the sewerage into the river should prove to be "to the injury or prejudice of others," and if appellee should fail to provide suitable appliances for the purification of the sewerage matter, then there will be ample opportunity to afford relief, upon complaint being made, either on behalf of the public, or of those injured or prejudiced.

The ordinance under which the sewers are proposed to be constructed, provides that they shall be paid for by a special assessment to be levied upon the property benefited thereby,

and by general taxation. It is claimed by appellants that the commissioners who were appointed by the county court to apportion the total cost of the improvement between the city and the property specially benefited, and assess the benefits upon the property so benefited, made the assessment upon the frontage plan, and that therefore the assessment is contrary to law, and void. It is claimed by appellee that the assessment was not made according to the frontage of the respective parcels of land, and that even if it was so made it would not necessarily be void. The certificate of the commissioners attached to the assessment roll shows that they estimated what proportion of the total cost of the improvement would be of benefit to the public and what proportion would be of benefit to the property to be benefited, and apportioned the same between the city and such property, so that each should bear its relative equitable proportion; that the amount assessed by them as special benefits to each lot, block, tract or parcel of land is shown upon the assessment roll; that they apportioned and assessed the amount found to be of benefit to the property upon the several lots, blocks, tracts and parcels of land in the proportion in which they will be severally benefited by said improvement; and that no lot, block, tract or parcel of land is assessed a greater amount than it will be actually benefited by the improvement. It would seem that an assessment so made would be in conformity with the requirements of the statute.

It appears from the evidence introduced by the appellants, that the commissioners first apportioned to the city the cost of the catch-basins, man-holes and lamp-holes, and the street crossings, to be paid by general taxation. They then assessed the residue of the cost upon the several lots according to their frontage, except as to corner lots. In respect to the corner lots, they ascertained the entire frontage of each of such lots on the sewers, or the sum of its two fronts, and deducted forty-four feet as to each lot within the fire limits and sixty feet as

to each lot outside of the fire limits, and, after making such deductions, assessed said corner lots upon the basis of the remainder of their entire frontages on the sewers. A special assessment for an improvement made on the basis of frontage, merely, and without any regard to special benefits, would be invalid. But we know of no rule which would preclude the commissioners appointed to make a special assessment from taking into consideration the number of feet of frontage of the several lots to be assessed upon the street or improvement, as an element in their ascertainment of benefits. Here, the mere fact that forty-four feet was deducted from the frontage of each corner lot in the business portion of the city, and sixty feet from the frontage of each corner lot in the residence portion, would seem to indicate that the assessment was not made simply upon the basis of frontage, but that the principle of benefits was considered. Besides this, it may be that a given improvement will frequently be of benefit to the several parcels of real estate benefited thereby in exact proportion to the frontage of said several parcels upon such improvement. The basis to be adopted by the commissioners for the ascertainment of benefits is not prescribed by law. The fact that they assess against each lot the exact cost of the improvement in front of the same, or the fact that the several amounts assessed against the several lots are in exact proportion to the frontage of said several lots, will not, of itself, vitiate the assessment, provided it appears that the special benefits are equal to such cost and in proportion to such frontage. (*City of Springfield v. Sale et al.* 127 Ill. 359.) In the case at bar it is expressly stated in the report that the several lots, etc., are assessed in the proportion in which they will be severally benefited, and that no lot, etc., is assessed a greater amount than it will be actually benefited.

The somewhat voluminous testimony that was introduced at the hearing of the objections filed to the assessment could not be intelligently discussed without unnecessarily extending

the length of this opinion. Suffice it to say that we have examined the evidence, and upon a consideration of it as a whole, find nothing therein which would justify a reversal of the judgment of confirmation rendered by the county court.

It is objected that the water mains of the city water-works have not been extended along the streets upon which portions of the property assessed are located, and that therefore the improvement will be of no benefit to such property. In that connection our attention is called to the case of *Hutt et al. v. City of Chicago*, 132 Ill. 352. In any event, and as to all of the property assessed, the sewers can be used for surface drainage, and the drainage of cellars, and the carrying off of wash water and all other waste water, and, in fact, for all purposes except water-closet purposes. It appears from the evidence that even in respect to real estate so located the sewers can be used for water-closet purposes also, provided tanks for the storage of water are constructed or the city mains are tapped by private pipes; and it moreover appears therefrom that even where the lots front upon streets wherein mains are laid, the owners of the lots are at the expense of making connections with the mains, and are compelled to pay for the city water which they use; and so, if such owners have an advantage in respect to the use of city water, it is an advantage which they are obliged to pay for. In our opinion, *Hutt et al. v. City of Chicago, supra,* has no application to this case. There the benefits were assessed, and the assessment was confirmed, upon the theory that a certain bridge would thereafter be constructed over the Chicago river, while here it does not appear that the assessment was either made or confirmed upon the theory that the city water mains would hereafter be extended.

In our opinion there was no error in overruling the objections to the assessment interposed by appellants. The judgment of confirmation is affirmed.

*Judgment affirmed.*