MARY T. GAULT *et al.*

*v.*

THE VILLAGE OF GLEN ELLYN.

*Opinion filed April 18, 1907.*

1. SPECIAL ASSESSMENTS—*when a lease is sufficiently set out in an ordinance for leasing water-works.* An ordinance authorizing a village to enter into a lease of water-works sufficiently includes the terms of such lease, within the meaning of the act of 1893 as amended in 1899, (Laws of 1899, p. 106,) where the proposed lease is set out *in hæc verba* in the preamble of the ordinance and incorporated in the body of the ordinance by reference.

2. SAME—*water-works leasing ordinance not void because lease contains an option to purchase.* An ordinance authorizing the authorities of a village to enter into a lease of water-works is not rendered void because the lease, which is otherwise valid, gives the village an option of purchase.

3. SAME—*what objection to water-works lease cannot be urged in special assessment proceeding.* The fact that a village, in leasing water-works, may have agreed to pay higher rent, in view of an option of purchase contained in the lease, than it would have paid without such option, does not constitute a defense to a special assessment to pay for water mains to be used in connection with the leased water-works, since no part of the assessment can be used to pay the rent under the lease but only for the construction of the water mains.

4. SAME—*when the term "standard pattern" does not render description of hydrants uncertain.* The term "standard pattern," applied by a water main assessment ordinance to the hydrants, does not render the description of the hydrants uncertain, where the size, weight and character of the pipe to be used in the improvement are fully specified, and the engineer in charge testifies that the term "standard hydrants," when used in connection with pipes of a given thickness, has a well defined trade meaning.

5. SAME—*when provision does not give engineer discretionary power.* A water main ordinance providing that "whenever, in the laying of the foregoing lines of pipe, it may be necessary to change the line or grade of any pipe, the change shall be made with specially curved pipes or bends," confines such changes to those necessary to conform to the grades and does not vest the engineer with arbitrary discretion in the matter.

6. SAME—*purpose of grade provision of water main ordinance.* A provision of a water main ordinance requiring pipes to be laid at

a certain depth below the grade or surface of the streets is essential only to enable the engineer or contractor to determine the amount of excavation necessary, since the flow of the water does not depend upon gravity, as in case of a sewer, but upon pressure, and hence substantial compliance with such provision is sufficient.

7. SAME—*expense of "letting and executing contracts" may be included in special assessment.* Under section 94 of the Local Improvement act, cities, towns and villages having less than 100,000 inhabitants may include in a special assessment not to exceed six per cent of the amount of the assessment for certain expenses, among which may be included the expense of "letting and executing contracts." (*Betts* v. *City of Naperville,* 214 Ill. 380, explained.)

APPEAL from the County Court of DuPage county; the Hon. MAZZINI SLUSSER, Judge, presiding.

ROBERT REDFIELD, GEORGE N. LYMAN, and LOUIS J. PIERSON, (TOLMAN, REDFIELD & SEXTON, of counsel,) for appellants.

S. L. RATHJE, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

This was an application in the county court of DuPage county to confirm a special assessment to pay the cost of constructing a system of water mains in the streets of the village of Glen Ellyn, in said county, which mains, when the improvement is completed, will connect with the waterworks, located in said village, of the Glen Ellyn Water Company, and which water-works have been leased by the said village from said water company from the first day of July, 1906, to the first day of July, 1921, for the purpose of supplying water and furnishing fire protection to the citizens of said village. The appellants appeared and filed objections to confirmation as to their lands, which objections were overruled, and they have prosecuted an appeal to this court.

The first objection to confirmation urged in this court is, that the improvement ordinance is void on the ground

that the ordinance providing for the leasing of said water-works by said village and authorizing the president of the board of trustees and the village clerk of said village to execute a lease of said water-works for and òn behalf of the village with said water company does not comply with the terms of "An act to enable cities, incorporated towns and villages to purchase or lease water-works," approved June 19, 1893, in force July 1, 1893, (Hurd's Stat. 1905, p. 340,) by virtue of which act said lease was made, in this: that said ordinance authorizing said water-works to be leased by said village, and a lease thereof to be executed by the president of the board of trustees and the village clerk, did not set out the terms of the proposed lease therein, and that said lease contained an option from the water company authorizing the village to purchase said water-works from it at any time during the life of said lease.

The act of 1893 provides "that in all cities, incorporated towns and villages where water-works are now constructed or may hereafter be constructed by any person or incorporated company, the city, town or village authorities in such cities, towns or villages may purchase or lease such water-works from the owner or owners of the same: *Provided, however,* that before such leasing or purchase shall be binding upon said city, incorporated town or village, the city council or the board of trustees shall pass an ordinance *including the terms of such lease or purchase,* which ordinance shall be published in a newspaper published in said city, incorporated town or village at least once in each week for two successive weeks, and said ordinance shall be posted for a period of not less than ten days in at least five public places in such city, incorporated town or village;" and unless there shall be submitted to said city council or board of trustees, within twenty-one days after said ordinance is so published and posted, a petition signed by twenty per cent of the number of voters voting at the last general city, town or village election, asking that such lease or purchase shall be submit-

ted to a vote, the city council or board of trustees may consummate the leasing or purchase provided for in the said ordinance; but if such petition shall be filed within the time aforesaid, it shall be the duty of the city council or board of trustees, by ordinance, to call a special election, as may be provided by law, to vote upon the question of said leasing or purchase, and if a majority of the voters voting upon such question at such election vote in favor of such leasing or purchase, then said city council or board of trustees shall proceed to complete said leasing or purchase, but if a majority of the votes cast are against such leasing or purchase, then said city, incorporated town or village shall proceed no further with said leasing or purchase for the period of six months next ensuing. The board of trustees, on March 13, 1906, passed an ordinance, which was approved on March 20, 1906, designated as "Ordinance No. 111," which read, in part, as follows:

"An ordinance authorizing and directing the president and clerk of the village of Glen Ellyn to enter into a lease with the Glen Ellyn Water Company.

"Be it ordained by the president and board of trustees of the village of Glen Ellyn, as follows:

"Whereas, the village of Glen Ellyn is desirous of furnishing water to its citizens and is also desirous of securing fire protection," etc., which ordinance thereupon recites certain conditions existing in the village, and then sets out the proposed lease with the Glen Ellyn Water Company *in hæc verba,* and concludes as follows: "Now, therefore, be it ordained by the president and board of trustees of the village of Glen Ellyn, as follows:

"Sec. 1. That the president and clerk of the village of Glen Ellyn be and are hereby authorized and directed to enter into said lease, on behalf of said village, with the Glen Ellyn Water Company, in the terms above set out, when this ordinance has been published and posted as provided by law.

"Sec. 2. This ordinance shall be in force from and after its passage."

The ordinance was published and posted in accordance with the provisions herein stated, and no petition for its submission to a vote of the people having been presented to the board of trustees of the village, the lease with the water company was duly executed by the president of the board of trustees and the village clerk.

Counsel for appellants concede that the lease was set out in the ordinance as passed, published and posted, but say it was contained in the preamble of the ordinance and not in the body of the ordinance, and for that reason urge it was not included in the ordinance, within the meaning of the act of 1893. While it has been held that the preamble is no part of an ordinance, we think the ordinance in question substantially complies with the statute, and that within the meaning of the act of 1893 the lease was included within the ordinance as passed, published and posted. The object sought to be accomplished by requiring the lease or purchase to be included in the ordinance as passed, published and posted, was, that the inhabitants of the city, incorporated town or village to which it was to apply might be fully advised as to the action the city council or board of trustees was about to take with reference to the providing of a water supply for said city, town or village, and we think it clear that object was as fully accomplished by including the lease in question in the preamble as it would had the lease been incorporated in the body of the ordinance. If, however, it should be held that the statute required the terms of the lease or purchase to be set out *in hæc verba* in the body of the ordinance, we think that was done in this case by reference, as section 1 of the ordinance expressly provides that the president and clerk of the village "be and are hereby authorized and directed to enter into *said lease*, on behalf of said village, with the Glen Ellyn Water Company, *in the terms above set out*, when this ordinance has

been published and posted as provided by law." In *Hutt* v. *City of Chicago*, 132 Ill. 352, a section of an ordinance for the extension of a street, after describing the proposed street and the property sought to be taken, concluded, "in accordance with the plan hereto annexed," and it was held that by said clause the plan mentioned was to be treated as a part of the ordinance. See, also, *Louisville and Nashville Railroad Co.* v. *City of East St. Louis*, 134 Ill. 656.

It is also urged that the ordinance authorizing the leasing of said water-works is void, as, it is said, the lease contains an option from the water company to the village authorizing the village to purchase the water-works, when the statute only authorizes the leasing or purchase of water-works and does not authorize the leasing of water-works with an option to purchase the same. The clause in the lease referred to reads as follows: "It is further stipulated and agreed that the said second party has the option of purchasing said water-works, including all the property above described and everything connected therewith, at any time during the term of this lease, at the price of eight thousand six hundred dollars ($8600), and the amounts which may have been paid in rentals under this lease at the time of such purchase, in excess of five hundred and sixteen dollars ($516) per annum, shall be applied upon such purchase price and in reduction thereof at the time of such purchase." The lease found in the ordinance recites that the water-works cost the water company the sum of $8600, and provides that the village shall pay to the water company, as rent therefor, $516 for the first year and $1016 per year thereafter for the balance of the term created by the lease. We are of the opinion that the lease was not rendered void by the insertion therein of the option clause hereinbefore set out. The lease with that clause eliminated is a valid lease, and we are unable to see how its insertion in the lease made the lease void. The village is under no obligation to accept said option, and it, as against the village, cannot be enforced.

It is, however, urged that the village has agreed, by the terms of the lease, to pay more rent than it would have agreed to pay if said option had not been inserted in said lease. We find no evidence of that fact in this record. If, however, such were the fact, we do not think that would avoid the lease in this proceeding. No part of the assessment sought to be collected in this proceeding will or can be used to pay the rent to accrue to the water company under said lease, but must be used to pay for the water mains, and the connections therewith, placed in the streets of said village, and the only bearing the lease has upon the validity of the assessment sought to be collected in this proceeding is, that the village would not be authorized to levy a special assessment to raise a fund with which to place water mains in the streets of the village unless it had provided a water supply for use in connection with said mains, as a special assessment cannot be levied to defray the cost of an improvement where the improvement sought to be constructed, when completed, will be ineffectual without a further improvement, which will involve further action on behalf of the municipal authorities before it can be constructed. (*Village of Hyde Park* v. *Carton,* 132 Ill. 100; *Hutt* v. *City of Chicago, supra.*) We think the village authorities had, previous to the levying of the assessment now sought to be collected, made a valid lease with the water company of its waterworks, and thereby obtained a water supply to be used in connection with the mains proposed by the improvement ordinance, together with their connections, to be placed in the streets of the village, which are to be paid for by said assessment, and that the objection that the ordinance authorizing the making of said lease was void is without force and was properly overruled.

The next objection urged is, that the improvement ordinance does not sufficiently describe the improvement, in this: that the description of the hydrants and the pipes to be used to make the water mains conform to changes in the grade

of the streets is indefinite and that the grade at which the mains are to be laid in the streets is uncertain. The ordinance provides that "all hydrants shall be of standard pattern and approved manufacture, to have not less than 4½-inch barrel, full valve area, and two 2½-inch hose couplings with standard thread, of sufficient length to set in a 5½-feet deep trench, with 4-inch hub base, positive drips, and all parts removable without breaking the ground around hydrants." The terms, "standard pattern and approved manufacture," when taken in connection with the description of the hydrants which follows, do not render the character of the hydrants which are to be used in the improvement indefinite or uncertain. The size, weight and character of the pipe to be used in the improvement are all fully specified in the ordinance, and the engineer in charge of the work testified that the term "standard hydrants," when used in connection with pipes of a given thickness, has a well defined trade meaning. (*Chicago Union Traction Co.* v. *City of Chicago,* 223 Ill. 37.) The hydrants were sufficiently specified in the ordinance.

The ordinance also provides, that "wherever, in the laying of the foregoing lines of pipe, it may be necessary to change the line or grade of any pipe, the change shall be made with specially curved pipes or bends." This provision left no discretion, we think, in the engineer as to where changes should be made in the lines of pipe or where specially curved pipes or bends should be used, but confined such changes and the use of the specially curved pipes or bends to such places in the lines of pipe as were found necessary to make the lines of pipe conform to the grade. *Ewart* v. *Village of Western Springs,* 180 Ill. 318.

The ordinance also provides: "All the afore-described pipe, castings and connections shall be laid in trenches excavated, on lines above described, to a depth of five and one-half feet below the grade or surface of said streets and avenues." The transmission of water through water mains

does not depend upon gravity, as in the case of sewers and drains, but upon pressure. The grade specified in an improvement ordinance like the one here in question is therefore only essential to enable the engineer or contractor to determine the amount of excavation to be made. The specification of the "grade or surface," found in this ordinance, we think therefore refers to the surface of the street, and clearly points out that the pipe, castings and connections which form the water mains provided for in this improvement shall be laid five and one-half feet below the surface of the street.

It is, however, urged that the land upon which the village of Glen Ellyn is situated is rolling and its streets undulating, and that it would for that reason be impracticable to lay the water mains exactly at five and one-half feet below the surface of the street. A substantial compliance with an ordinance is all that is necessary; (*People* v. *Church*, *192* Ill. *302*;) and the ordinance expressly provides that where, in laying the water mains, it becomes necessary to change the line or grade thereof, such changes should be made by using curved pipes or bends, which provision was clearly inserted in the ordinance to meet the uneven conditions of the lands in the village over which the streets run in which the water mains were to be laid. We think the improvement ordinance described the improvement with sufficient particularity.

The ordinance provides that the whole cost of the improvement, including the sum of $2350, being the amount included in the estimate as the cost of making and levying the special assessment, letting and executing contracts, attending and making return of assessment rolls, and the necessary estimates, examinations and expenses connected with the proceedings provided for, including court costs and the collecting of the assessment, should be paid by special assessment, and it is urged that the expenses of "letting and executing contracts" was unauthorized and void and had the

effect to annul the assessment.   Section 94 of the Local Improvement act of 1897 provides that cities, towns and villages having a population of less than 100,000 may, in and by the improvement ordinance, include in the assessment not to exceed six percentum of the amount of such assessment to be applied towards the payment of the expense of making and levying the assessment, and of the letting and executing of contracts, and the cost and expense attending the making and return of the assessment roll, and the necessary estimates, examinations, advertisements, etc., connected with the proceedings therein provided for, including the court costs and other costs of making and collecting said assessment.   The improvement in this case was estimated to cost, in round numbers, the sum of $40,000, and as the village of Glen Ellyn contained less than 100,000 inhabitants, we are of the opinion the ordinance, in the particular pointed out, was valid.

In *Betts* v. *City of Naperville,* 214 Ill. 380, relied upon by appellants, the ordinance provided for the payment of a specified amount for the maintenance of the board of local improvements in the village of Naperville, which provision was held invalid.   In that case it was held the maintenance of the board of local improvements should be paid by general taxation, and not by special assessment.   We see no objection, however, to a special assessment upon property specially benefited, to pay the entire cost of the local improvement, which we think may include the cost of "letting and executing contracts" connected with the improvement. When the question then before the court is borne in mind, we find nothing in the *Betts case* inconsistent with this holding.

Finding no reversible error in this record the judgment of the county court will be affirmed.

*Judgment affirmed.*