(No. 15358.—Reversed and remanded.)
THE CITY OF CARTERVILLE, Appellee, *vs.* J. R. PHILLIPS
*et al.* Appellants.

*Opinion filed October 20, 1923.*

SPECIAL ASSESSMENTS—*assessment cannot be levied for water-distribution system if no provision is made for water supply.* A special assessment cannot be levied to pay the cost of an improvement which will be ineffectual without a further improvement requiring further action on behalf of the municipal authorities; and no assessment can be levied for the construction of a water-distribution system within the city if the construction of a water-supply system is contingent upon the approval of a certain specified bond attorney and is not a legally enforcible duty of the city.

APPEAL from the County Court of Williamson county; the Hon. A. D. MORGAN, Judge, presiding.

MOSES PULVERMAN, (THOMAS J. LAYMAN, of counsel,) for appellants.

HAL G. GALLIMORE, (E. M. SPILLER, of counsel,) for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from the judgment of the county court of Williamson county confirming a special assessment levied by the appellee, the city of Carterville, under the Local Improvement act, for the purpose of constructing a distribution system in connection with the establishment of a public water supply for such city. The appellee filed its petition to the November term, 1922, of the county court of Williamson county, praying that an assessment be levied to pay the cost of a local improvement known as "Water District No. 1," as provided by ordinance No. 59 of such city. The improvement contemplated under this ordinance consists of the laying of cast-iron water pipes in streets, alleys and roadways of the city of Carterville, together with

309—28

the installation of valves and fire-hydrants, for the purpose of supplying the residents of such city with water for protection from fire and for domestic use. The improvement contemplated by the ordinance did not provide for the water to be distributed through such pipes, but was merely a distribution system for the purpose of carrying water throughout the city. The water itself was to come from a reservoir constructed under the terms of ordinances Nos. 55 and 58 of such city.

There is no public water supply of any kind in the city but the people depend on wells and cisterns for water, both for domestic use and for fire protection. In the summer of 1922 the city council attempted to provide for an adequate water system and took the following steps in order to accomplish this purpose: First, it sought to provide for the construction of an outside waterworks or water-supply system, to be built under the act of April 22, 1899, (2 Hurd's Stat. 1921, secs. 270a-270g, p. 421,) and to be paid for by water certificates. This water-supply system was to consist, in the main, of a reservoir, pumping station, filter-house and standpipe, devised for the purpose of piping water into the water mains of the inside distributing system. This system was authorized by ordinance No. 55. Under that ordinance bids were advertised for, and the bid of the B. S. Craine-C. L. Parish Company, an Illinois corporation, for the construction of this outside supply system was accepted. The bid price was $150,000, to be paid in water certificates. After the acceptance of such bid the city council passed ordinance No. 58, providing for the issuance of water certificates in the total sum of $150,000 to pay for the construction of the outside supply system. After the authorization of such water certificates a contract was entered into between the city and the Craine-Parish Company for the construction of the outside supply system. Second, an ordinance was adopted for an inside distributing system, to be built under the Local Improvement act.

After the passage of ordinance No. 58, and before the contract was entered into for the construction of the outside supply system, ordinance No. 59 was passed, September 19, 1922, providing for the inside distributing system of water mains and fire-hydrants. This ordinance designates such water system as "Water District No. 1," provides for the inside distributing system, and under it proceedings were instituted for the levy of special assessments. The total assessment for this purpose was $223,393.76, none of which was assessed as public benefit.

The issue presented in this case involves the validity of the proceedings in connection with ordinance No. 59, but directly involves, in addition, the proceedings under ordinances No. 55 and No. 58 for the construction of the outside water-supply system for the city of Carterville.

A number of objections were presented by the objectors below, the appellants here. These objections are grouped by appellants as follows: (1) That ordinance No. 59, providing for an inside distributing system, does not provide for a local improvement, because no water-supply system exists and no legal provision has been made for such a system; (2) that a substantial variance exists between the estimate and the ordinance; (3) that the estimated cost of certain substantial component parts of the improvement as itemized in the estimate is grossly excessive; (4) that certain lands are necessary for the improvement and have not been acquired by the city nor proceedings taken for the purpose of acquiring them; (5) that no final resolution of the board of local improvements was made a matter of record at the time, as provided by law; (6) that the ordinance is illegal and void because unreasonable and oppressive, in that it provides for a large number of "dead ends" and a large number of superfluous mains; (7) that a substantial portion of the proposed improvement is located within the corporate limits of the village of Crainville; and (8) that substantial portions are located outside of the cor-

porate limits of the city of Carterville. In the view we take of this case it is necessary to discuss only the question raised in the first point of appellants indicated above.

From the facts it is clear that the city of Carterville is attempting to establish a public water supply by means of two proceedings which may be legally regarded as distinct from each other. The inside distributing system is not a local improvement upon which special assessments may be based unless linked up with a water-supply system by means of which water may be provided to flow through the mains so constructed. In *City of Waukegan* v. *DeWolf,* 258 Ill. 374, it was properly said (p. 381) that "water mains laid in a street for local use would be utterly worthless and afford no benefit to adjacent property without a standpipe or reservoir and pumping apparatus to furnish the water which confers the benefit." If the city has not provided a water-supply system or made legal provision for the establishment of such a system to connect with the inside water-distribution system no special assessments can be levied and collected for the establishment of such inside system. This court said in *Gault* v. *City of Glen Ellyn,* 226 Ill. 520, on page 526: "The village would not be authorized to levy a special assessment to raise a fund with which to place water mains in the streets of the village unless it had provided a water supply for use in connection with said mains, as a special assessment cannot be levied to defray the cost of an improvement where the improvement sought to be constructed, when completed, will be ineffectual without a further improvement, which will involve further action on behalf of the municipal authorities before it can be constructed." This same rule has been followed and adopted in *City of Waukegan* v. *Burnett,* 234 Ill. 460, and *Clear Creek Drainage District* v. *Railway Co.* 264 id. 640. The issue here is therefore one of fact. Do ordinances Nos. 55 and 58, with the contract entered into thereunder, constitute a legally enforceable provision for a water supply to be dis-

tributed through the inside water system to be constructed under the terms of ordinance No. 59?

Appellants' chief contention is that the provision for the supply system is ineffective because the contract therefor is contingent. The bid submitted by the Craine-Parish Company contains this provision: "This bid is made upon the understanding that the work in question is the construction and procuring of a water supply for the city of Carterville, Illinois; that said water supply is to be connected to and the water delivered into a water distribution system to be constructed under the Local Improvement act of Illinois and paid for by special assessments upon the property benefited; that proceedings are now pending for said water distributing system, and that neither such system nor this water-supply proposition will be constructed except contingent upon and in connection with the other. This bid is made, therefore, contingent upon and subject to the condition that the judgment or confirmation shall be duly entered in such special assessment proceedings. This bid is also made upon the provision that all proceedings relating to the construction of the said water system shall be approved, as to their legality, by F. William Kraft, bond attorney, of Chicago."

The contract entered into between the city and the Craine-Parish Company contains a provision that "the plans, specifications, profiles, bid and plats for the same, which documents, and each and every part thereof, are now on file in the office of the city clerk and are incorporated herein and made a part of this contract by reference as fully and completely as though the same were written out at length herein," and also provides that "the contractor herein shall not be obligated to start work until after the confirmation of assessments for water district No. 1 is had." Appellants contend that the contract thus incorporates the provisions of the bid to the effect that the outer and inner water systems shall be constructed as parts of one plan, and

that proceedings relating to the construction of such water system shall be subject to approval, as to their legality, by a designated bond attorney.

Counsel for appellants argue that the construction of the water-supply system is dependent upon certain contingencies, viz., the judgment of confirmation of special assessment proceedings, the construction of the inside water system, and the approval of a specified attorney as to the legality both of the special assessment proceedings and of the proceedings regarding the water-supply system. The contract for the water-supply system, by expressly embodying the terms of the bid by reference, may be said to be contingent upon the construction of the water-distribution system. If the outside supply system is not specifically provided for in such a manner as to make its construction a legally enforceable duty, it is clear that under the decisions quoted *supra,* the inner system is not a local improvement for which special assessments may be imposed. Under the terms of the bid and the contract it is possible that the outside system may fail because of the failure to receive the approval of the bond attorney. The record does not rebut the possibility of such a contingency, and there is no legal method of compelling approval by the bond attorney. Upon the facts, therefore, it must be held that the contingency of the bond attorney's approval is such as to make it impossible to levy the assessment for the improvement in question. No such contingency should be involved in assessment proceedings for confirmation.

We express no opinion on the other questions raised on the record.

The judgment of the county court will be reversed and the cause remanded to that court.

*Reversed and remanded.*