THE VILLAGE OF GARDNER, Appellant, *vs.* MAREN CHRISTENSEN *et al.* Appellees.

*Opinion filed April 23, 1926.*

1. SPECIAL ASSESSMENTS—*assessment for water mains cannot be made without provision for water supply.* A municipality is not authorized to levy a special assessment to place water mains in its streets until it has provided a water supply for use in connection with the mains and a means of transferring the water from the source of supply to the mains.

2. SAME—*when contract for construction of water tank, pump house and pumps is not sufficient to authorize an assessment for water mains.* A contract for the construction of a water tank, pump house and pumps to furnish a water supply from the city well is not sufficient to authorize a special assessment for laying water mains, where such contract does not unconditionally obligate the city to complete the plant in time to furnish water for the mains when they are ready for use.

APPEAL from the County Court of Grundy county; the Hon. WILLIAM E. VINER, Judge, presiding.

LANGWORTHY, STEVENS & McKEAG, for appellant.

H. B. SMITH, and S. J. HOLDERMAN, for appellees.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This is a proceeding under the Local Improvement act, instituted in the county court of Grundy county by the village of Gardner for the construction, by special assessment, of a distribution system of water mains. Appellees objected to the confirmation of the assessment against their respective properties for the reason, among others, that the village had not provided an elevated storage tank and a pump to transfer the water from the source of supply to the distribution system. This objection was sustained and appellant prosecuted this appeal.

It is obvious that the laying of water mains in the streets of a municipality will not benefit the abutting property unless there is an adequate water supply and a means of transferring the water from its source into the mains. Appellant has provided a supply of water by drilling a deep well, which has a flow of fifty gallons a minute. The petition in this proceeding was filed March 21, 1925. August 1 the village entered into a contract with the Pittsburg-DesMoines Steel Company, by which the company agreed to construct an elevated water tank, pump house and pumps on the lot where the well is located. This contract provided: "The time of commencing the work under this contract, notwithstanding other provisions in the specifications herein, shall be within ten (10) days after notice by the engineer of the village, and the work shall be fully completed within ninety (90) days after the time of the commencement of the work." October 23 the Pittsburg-DesMoines Steel Company acknowledged receipt of the following notice: "Pursuant to the terms of the contract dated August 1, 1925, and entered into by you with the village of Gardner for the construction of a pump house, water tower and tank, and furnishing, erecting, connecting and testing waterworks machinery and

equipment and pursuant to the direction of the council of the village of Gardner, we hereby notify you that you are to commence the work under said contract not later than March 15, 1926, and the work shall be fully completed within ninety (90) days after the commencement of the work, provided, however, you shall not be required to begin the work before the village takes steps to let the contract for the construction of the water supply mains mentioned in the specifications attached to and forming a part of said contract and to which the discharge pipes you are to furnish are to be connected in said village, but in any event you are to begin work on your contract as soon as steps are taken by the village to let the contract for said water supply mains."

The law is well settled in this State that a municipality is not authorized to levy a special assessment to raise a fund with which to place water mains in its streets until it has provided a water supply for use in connection with said mains and a means of transferring the water from the source of supply to the mains, for the reason that the improvement sought to be constructed, when completed, will be ineffectual without a further improvement which will involve further action by the municipal authorities before it can be constructed. (*City of Carterville* v. *Phillips,* 309 Ill. 433; *Gault* v. *Village of Glen Ellyn,* 226 id. 520; *Hutt* v. *City of Chicago,* 132 id. 352.) Appellant has not provided the means of transferring the water from its well to the proposed distribution system, nor has it entered into an unconditional contract for the construction of the necessary works to make this connection. Under the contract of August 1, 1925, the contractor was not permitted to begin the construction of the pumping plant and storage tank until it had received a notice from the village engineer to begin the work. The notice that was sent the day before the hearing on the legal objections was concluded fixed the date for the commencement of the work under the contract

as March 15, 1926, with a proviso that the work should not begin until the village had let the contract for the construction of the distribution system. This qualification of the notice fixing the time for the performance of the contract was added for the benefit of the village and not as a favor to the contractor. Unless the notice is construed to be a notice to the contractor to begin the work as soon as the village lets the contract for the construction of the water mains, and not before, it is not intelligible. Taking into consideration the facts and circumstances surrounding the making of this contract and the serving of this notice, it is clear that such was the intention of the parties. The village is asking for a judgment against the lands of appellees before it has obligated itself, unconditionally, to build the pumping plant. This being true, there is no unconditional contract existing which provides for the erection of the pumping plant and storage tank, for the reason that the contract for the construction of the mains may never be let, and so the property owners are uncertain whether the village will construct the additional improvement necessary to make effectual the distribution system for which judgment is now asked against their lands. The evidence shows that the distribution system which was to be constructed at the expense of the property owners was to cost $70,000, whereas the pump house, pump and elevated tank were estimated to cost the comparatively small sum of $5550. It would be unreasonable to require the property owners to construct this extensive distribution system without the assurance that the village would have the pumping plant and storage tank ready to put the water into the mains so as to render the water system beneficial. This assurance can be had only by the village entering into a binding and unconditional contract which will assure the completion of the pumping plant by the time the distribution system is completed.

The objection was properly sustained by the county court, and its judgment is affirmed. *Judgment affirmed.*