WILLIAM D. EWART *et al.*

*v.*

THE VILLAGE OF WESTERN SPRINGS.

*Opinion filed June 17, 1899.*

1. PUBLIC IMPROVEMENTS—*what a general and what a local improvement.* The power house and generator plant of an electric lighting system, together with the engine, generator and appliances located at the power house, are of public benefit and the cost thereof must be met by general taxation, but the poles, electric conductors, lamps and appliances connected therewith are of local benefit and their cost may be met by special assessment.

2. SPECIAL ASSESSMENTS—*uncertainty in description removed by extrinsic evidence.* The uncertainty of description in an ordinance which refers to a street upon which wires and poles for an electric lighting system are to be erected as "Forty-seventh street (South boulevard)" is removed by the testimony of a competent witness that South boulevard is merely another name for the continuation of Forty-seventh street, and that such street between the points named in the ordinance is better known as Forty-seventh street though appearing on the map as South boulevard.

3. SAME—*when location of power house is sufficiently specified.* An ordinance for an electric lighting system which provides for a power house at "the water-works pump house" on a certain street need not further specify the locality, where such pump house is a public building whose location is known.

4. SAME—*word "system," used in ordinance, implies connection.* The word "system," used in an ordinance for "a system of electric conductors and poles provided with street lamps," etc., implies that the electric conductors are connected with the power house.

5. SAME—*length and top diameter of cedar poles are sufficient specification of size.* An ordinance providing that the poles for electric wires be of "white cedar, generally thirty feet in length and six inches in diameter at the tops," is sufficient in its specification of the size, although no bottom diameter is given.

6. SAME—*when description of electric wires is not uncertain.* An ordinance providing that electric conductors are to be of "round copper wire, covered with weather-proof insulation, and of such size that the loss between the electric generators and the farthest outlet shall not exceed five per cent, no wire being smaller than No. 10 Brown & Sharp gauge," is not defective in describing the wires.

7. SAME—*section 46 of article 9 of the City and Village act construed.* Section 46 of article 9 of the City and Village act, providing that "if any assessment shall be annulled by the city council or board of

trustees or set aside by any court a new assessment may be made and returned and like notice given and proceedings had as herein required in relation to the first," etc., refers to the setting aside of an assessment after confirmation.

8. SAME—*when annulment of assessment roll does not end proceeding.* The setting aside of an assessment, before confirmation, by the court under section 33 of article 9 of the City and Village act, on the ground that one of the commissioners was interested, does not end the proceeding, and new commissioners may be appointed, a new assessment roll returned and the cause proceed to final judgment without the filing of a new petition.

9. SAME—*right of court on second hearing to consider testimony offered at first hearing.* Where an assessment is annulled before final judgment on the ground that one of the commissioners was interested, and the cause is continued, the court may, on the hearing of objections to a new roll filed without a new petition, consider testimony offered at the first hearing to meet an objection not then passed upon, without the re-introduction of the witness.

10. APPEALS AND ERRORS—*when objection to clerk's certificate cannot be considered on appeal.* A general objection to the admission, at confirmation, of a certified copy of an extract of the minutes of the board of trustees and of a certified copy of the ordinance, is not sufficient to sustain an objection, on appeal, that the clerk's certificate was defective in failing to state that he was the keeper of the records.

PHILLIPS, J., dissenting.

APPEAL from the County Court of Cook county; the Hon. R. H. LOVETT, Judge, presiding.

This is a proceeding, commenced in the county court of Cook county by the appellee, the village of Western Springs, by the filing of its petition therein on June 24, 1897, for the confirmation of a special assessment to pay the cost of constructing a plant for street lighting in that village by electric light, including power house, electric generator engine, poles, electric conductors and lamps, and necessary appurtenances.

Objections were filed by the appellants to the confirmation of the assessment; a hearing was had thereon in the latter part of November, 1897; and on December 3, 1897, the county court entered an order sustaining one of the objections to the assessment. The objection so sus-

tained was, that one of the commissioners appointed to levy the assessment was the owner of property assessed therein. The court held, that said objection was valid, and ordered that, by reason thereof, the assessment be annulled and set aside, and the application to confirm it be denied. In the same order the court, upon the application of the petitioner, the village, reduced the amount of the assessment twenty-five per cent from the total estimated cost thereof, and appointed new commissioners to make a new assessment.

The original assessment was for $6000.00, but, on December 31, 1897, a new assessment roll was made for $4500.00 and filed. Objections were also filed by the same objectors to the new assessment.

On February 5, 1898, a hearing was had upon the objections filed to the new assessment, and on February 9, 1898, the county court entered an order overruling all of the objections, to which order exception was taken. A jury was called and sworn, and a verdict rendered by them in favor of the appellee, the village, that the property of the appellants was not assessed more than it was benefited, nor more or less than its proportional share of the cost of the improvement. Judgment was thereupon entered confirming the assessment, and the present appeal is from such judgment of confirmation.

GEORGE W. BROWN, W. P. QUINBY, EDWARD F. GORTON, and WILLIAMS, HOLT & WHEELER, for appellants.

FREDERICK A. WILLOUGHBY, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—A general objection is made by the appellants to the effect that the municipality has not the power or authority to make the proposed improvement. More specifically stated, this objection is, that the power to light

the village cannot be exercised by way of special assessment. The contention of appellants is, that such an improvement, as the ordinance in this case contemplates, is not a local improvement within the meaning of the constitution and the statute, and that, therefore, its cost cannot be assessed upon the property alleged to be benefited thereby.

In *Hughes* v. *City of Momence*, 163 Ill. 535, we held that the cost of constructing a reservoir, sinking a well, erecting a stand-pipe and pumping works and buildings for the same, with a view of constructing water-works in a city, were not local improvements, but were of general utility to the inhabitants of the city, and must be paid for by general taxation. In the same case, however, it was held, that the laying of pipes for the conveyance of water along particular streets was local to the particular streets, on which such pipes were laid, and of special benefit to the property thereon, and was, therefore, a local improvement, which could be paid for by special assessment or special taxation.

In *O'Neil* v. *People*, 166 Ill. 561, it was held that, where an ordinance provides for the construction of a system of water-works, the construction of the stand-pipe, engine house, etc., is an improvement that is general and not local in its character; but where such ordinance contemplates the construction merely of reservoirs, fire hydrants and water mains, these latter are local improvements, and may be paid for by special assessment.

Again, in *Hewes* v. *Glos*, 170 Ill. 436, it was held that, where corporate authorities attempt to construct a general water-works system for fire protection and general uses by special assessment, such an improvement is not local in its character, and an assessment for such a purpose ought not to be confirmed by the court; but that a city or village has the power to provide for a system of water-works for fire protection and for the use of the inhabitants, and that the laying of water main pipes for the

distribution of water along particular streets for the use
of the inhabitants is a local improvement, for which a
special assessment can be levied.

In *Harts* v. *People*, 171 Ill. 458, it was again held that
the construction of reservoirs, fire hydrants and water
mains is a local improvement which can be paid for by
special assessment, but where an ordinance contemplates
the erection of a city hall, pumping works, pumps and
stand-pipes, that such structures are improvements of a
general character, and not local improvements within the
meaning of the law.

These cases draw a distinction, so far as the construc-
tion of systems of water-works are concerned, between
the stand-pipe, pumping works and buildings, which are
of general utility, and the pipes, which convey the water
along particular streets. The former must be paid for by
general taxation, but the latter are held to be local im-
provements, which may be paid for by special assessment.

If the water mains and hydrants of a system of water-
works, which extend along the streets of a city, are a
local improvement, we see no reason why the poles, wires
and lamps in an electric light system are not also a local
improvement. So far as the plant for lighting the streets
by electricity includes the power house and electric gen-
erator engine, the latter may be regarded as improve-
ments of general utility, and as not coming within the
legal definition of local improvements. But the poles,
wires and lamps in an electric light system are the means
of furnishing the necessary light for the protection of
the property of the citizens, just as the water mains and
hydrants of a system of water-works are the means of
furnishing needed water for fire protection and other uses
of the citizens. It cannot be said, that property upon a
street lighted with electric light is not more valuable
than property upon a street where there is no such elec-
tric light. Property is in fact specially benefited by elec-
tric or other adequate lighting along the street, on which

it is situated, quite as much as it is benefited by water mains. It follows that, if water mains are local improvements, poles, and wires in an electric light system are also local improvements. The former are conduits for water, the latter for electricity. So, also, it must be said that, if hydrants attached to the water mains are a local improvement, lamps attached to the wires in an electric lighting system are local improvements, because the latter are the means of using the electricity, as the former are the means of using the water. The test whether an improvement is local or not depends upon the question whether or not it specially benefits the property assessed.

The improvement, which consists in the erection of poles, wires and lamps in an electric light system, is certainly as much a permanent improvement, as the water mains and hydrants in a system of water-works. (*City of Chicago* v. *Blair*, 149 Ill. 310; *Carpenter* v. *Capital Electric Co.* 178 id. 29).

Sections 2 and 3 of the ordinance in the case at bar conform to the rule laid down in the cases above referred to. Section 2 of the ordinance provides, that so much of the improvement, as relates to the power house and generator plant, including engine generator and all appurtenances located at the power house, shall be paid for by general taxation. Section 3 provides that so much of the improvement, as relates and refers to the placing, erection and construction of poles, electric conductors, street lamps and all appurtenances thereto belonging, not included in said power house or the generator plant located at said power house, shall be made, and the cost thereof shall be paid for, by special assessment to be levied upon the property benefited thereby.

We are, therefore, of the opinion that the village had the power under the law to make the proposed improvement in the manner set forth in the ordinance, and that the county court committed no error in overruling the objections, alleging the want of such power.

*Second*—Several technical objections were made by the appellants to the confirmation of the assessment, which were not improperly overruled.

The ordinance provides, "that lines of poles and conductors be placed upon streets of the village as follows: Forty-seventh street (South boulevard) from the power station at the water-works pump house to East boulevard; Prairie avenue from Forty-seventh street to Burlington street; Park avenue from Forty-seventh street to Burlington street; Lawn avenue from Forty-seventh street to Burlington street." It is claimed, that the ordinance is uncertain and insufficient "in the specification of the nature, character, locality and description of said improvement," upon the alleged ground that, according to the map introduced in evidence, neither Prairie, Park nor Lawn avenue runs to Forty-seventh street, but to South boulevard. It is said to be impossible to tell from the description in the ordinance which street is really intended, Forty-seventh street or South boulevard, and that, in this respect, the ordinance is fatally defective on an application for confirmation. (*Steenberg* v. *People*, 164 Ill. 478; *Sanger* v. *City of Chicago*, 169 id. 286).

It appears from the map introduced in evidence, that Forty-seventh street runs east and west, and that Forty-seventh street from the east limits of the village to the east side of East boulevard is called Forty-seventh street, but that it is called South boulevard from the west side of East boulevard to the west limits of the village. East boulevard, which is sixty-six feet wide, runs between and separates what is called on the map Forty-seventh street from the part which is called South boulevard. Prairie, Park and Lawn avenues run to the street called upon the map South boulevard, and it is contended that they are incorrectly described in the ordinance, as running from Forty-seventh street instead of South boulevard.

The ordinance itself, by putting the words South boulevard in parenthesis alongside of the words "Forty-sev-

enth street," would seem to indicate that Forty-seventh
street and South boulevard are the same street. But
whether this is so or not, the certificate of evidence con-
tains the testimony of one Benezette Williams, the presi-
dent of the board of trustees of the village, who swears
that he has lived in Western Springs eighteen years,
and is acquainted with the street in question, and that
the street, known as Forty-seventh street, is a continua-
tion of Forty-seventh street of the city of Chicago, and
is known as Forty-seventh street in the villages of La-
Grange and Western Springs; that South boulevard is
merely another name for Forty-seventh street; that, as
shown on the map, Forty-seventh street and South bou-
levard are the same street, and are identical the one with
the other; and that the street is known more by the name
of Forty-seventh street through its entire length as it
runs through the village.

We think it sufficiently appears from this testimony
that the ordinance, in describing Prairie, Park and Lawn
avenues as starting from Forty-seventh street, really and
in effect describes them as starting from South boulevard.

Counsel for appellants, however, make the objection
that the testimony of Williams was introduced in support
of the objections made upon the first hearing in Decem-
ber, 1897, and not in support of the objections made upon
the last hearing in February, 1898. This objection is with-
out force. The testimony in support of the objections
was addressed to the court, and is in the record and is
a part of the bill of exceptions. It was not necessary
to re-introduce the witness, Williams, upon the second
hearing as to this point. It is true that there were two
assessments, but the proceeding or suit was a single pro-
ceeding or suit, beginning with the filing of the petition
and ending with final judgment in the case. The objec-
tion, in support of which the testimony was introduced,
was not passed upon at the first hearing, but was still
pending when the second hearing began.

It is further said, that the ordinance is indefinite in the description of the improvement, because it does not state where the power house is located, or that the lines of wires and poles connect with each other. The ordinance was not defective in this respect. The water-works pump house is a public building, whose location is known, and it is not necessary to describe its exact locality in the ordinance. When the ordinance provides "that a system of electric conductors and poles provided with street lamps be built in the streets of said village located upon said streets as hereinafter specified," the use of the word "system" implies that the wires are connected with the power house.

It is also claimed, that the specifications for the material, used in the construction of the plant, are not sufficiently specific and certain, as they are set forth in the ordinance. Upon this subject the appellants, in support of their objections, introduced one expert witness, and the appellee, the village, introduced two expert witnesses. The latter testified, that the descriptions, in the specifications, of the poles and wires and electric generator and insulators were sufficiently accurate and specific to enable the commissioners to estimate their cost. We see no reason for holding, that the court below erred in giving credence to the testimony, introduced upon this subject by the village. We cannot follow counsel through all the minute objections, which they make to the description of the poles, conductors, insulators, lamps, etc. We will only notice one or two of these objections. The ordinance says, that the poles are "to be white cedar, generally thirty feet in length and six inches in diameter at the tops, and, wherever necessary, greater lengths to be used; to be of quality to conform to the Western Union Telegraph Company standard specifications. They are to be solidly set five feet in the ground, and one hundred and twenty-five feet apart, or thereabouts, in such manner as to be adapted to the conditions of the streets." It is ob-

jected to this description, that, while the diameter of the poles at the tops is given, their diameter at the bottoms is not stated. Expert witnesses, introduced by the appellee, testified that, when the diameter of the top of a pole is given, it is a sufficient statement of what the diameter of the bottom of the pole should be. One of these witnesses says: "Top diameter of six inches determines approximately size of bottom in cedar poles."

It is also said, that the use of the words, "or thereabouts," leaves it discretionary with the contractor to put poles one hundred and twenty-five feet apart, or at any other distance apart. The expert witnesses say, that this expression is necessarily used, because streets and railway crossings are sometimes in the way, so that it is not possible always to put the poles at the distance of exactly one hundred and twenty-five feet apart.

So, in regard to the wires, the ordinance states that the conductors are "to be a round copper wire, covered with weather-proof insulation, and of such size that the loss between the electric generators and the farthest outlet shall not exceed five per cent, no wire being smaller than No. 10 Brown & Sharp gauge." The expert witnesses testify, that this description is specific enough to enable the commissioners to estimate the cost; that, "the loss between the electric generators and the farthest outlet shall not exceed five per cent," is an expression, which means that wire must be used, which will carry the current without loss of more than five per cent from its resistance; and that any wire would comply with this specification, if it did not cause a loss of over five per cent. We forbear to discuss the objections thus made to the descriptions of the wires, poles and insulators any further. We are of the opinion, that the descriptions were not defective as not being sufficiently specific.

*Third*—It is further contended by the appellants, that, when the county court annulled the first assessment on account of the disqualification of one of the commission-

ers, it put an end to the entire proceeding, and that, when the new commissioners presented the new assessment roll, it was necessary for the village to file a new petition, and give new notices, as was done when the original assessment roll was reported.

In making this objection counsel applies section 46 of article 9 of the City and Village act to the present case. Section 46 provides that, "if any assessment shall be annulled by the city council or board of trustees, or set aside by any court, a new assessment may be made and returned, and like notice given and proceedings had, as herein required in relation to the first; and all parties in interest shall have the like rights, and the city council, or board of trustees, and court, shall perform like duties, and have like power in relation to any subsequent assessment, as are hereby given in relation to the first assessment." (1 Starr & Curt. Ann. Stat.—2d ed.—p. 775).

Section 46 has reference to such assessments, as have been set aside by the legislative authority of the city or village, or by some court, after they have once become in fact assessments by the order of the county court. The setting aside mentioned in section 46 is one, which takes place subsequently to the confirmation of the assessment. Here, however, the action of the court was taken under and in pursuance of section 33 of said article 9. (1 Starr & Curt.—2d ed.—p. 768). Section 33 provides that "the court, before which any such proceeding may be pending, shall have authority, at any time *before final judgment*, to modify, alter, change, annul or confirm any assessment returned, as aforesaid, or cause any such assessment to be re-cast by the same commissioners whenever it shall be necessary for the attainment of justice, or may appoint other commissioners in the place of all or any of the commissioners first appointed, for the purpose of making such assessment, or modifying, altering, changing or re-casting the same, and may take all such proceedings and make all such orders as may be neces-

sary to make a true and just assessment of the cost of such improvement according to the principles of this act, and may from time to time, as may be necessary, continue the application for that purpose as to the whole or any part of the premises."

Section 33 authorizes the court to annul an assessment which is returned. The court here annulled the assessment then before it on account of the disqualification of one of the commissioners, and ordered new commissioners to be appointed to prepare an assessment, which should be made in the manner prescribed by law. Although the assessment was changed, yet the proceeding was the same. The proceeding does not consist merely of the assessment roll itself, but the assessment roll is merely a part of the suit, begun by the petition, which is filed to secure from the county court an assessment in the manner prescribed by law. Although section 33 authorizes the court to modify, alter, change or annul the assessment, or cause it to be re-cast by the same commissioners, or to appoint other commissioners for the purpose of making a new assessment, yet the proceeding, begun by the filing of the petition, is not thereby ended. The assessment roll is merely changed under the order of the court, and, when it is again reported, the court acts upon the new assessment without the necessity of causing a new petition to be filed, and a new proceeding to be instituted. Where an assessment is set aside, as was done here, not on account of a defective ordinance, but on account of a disqualified commissioner, it is not necessary to file a new petition. The ordinance remains unrepealed and unchanged, and the difficulty lies only in the fact that one of the commissioners is technically disqualified to act. Section 33 expressly provides, that the application may be continued from time to time as may be necessary. The case, here, was still continued in court after the order for the appointment of the new commissioners. Therefore, the law as it stood when the petition

was filed in June, 1897, and not the law of 1897, which went into effect on July 1, 1897, was applicable to the proceedings subsequently taken.

*Fourth*—It is further claimed by the appellants, that the board of trustees of the village of Western Springs did not approve the report of the commissioners appointed to estimate the cost of the improvement. We do not think that there is any force in this objection. Counsel for the village introduced a certified copy of a part of the minutes of a meeting of the board of trustees of the village, held on June 18, 1897; and these minutes show, that the report of the commissioners, appointed on June 8, 1897, to make an estimate of the cost of constructing an electric light system in the village, was read and accepted, and that the village attorney was on motion of the trustees instructed to take the ordinance into court as soon as possible. The word, "accepted," must here be regarded as equivalent to the word, "approved," because the board ordered court proceedings to be instituted, and this would not have been done, unless the report of the commissioners was approved. Section 21 of article 9 provides that, "on such report being made, and approved by the council or board of trustees, as the case may be, it may order a petition to be filed by such officer as it shall direct in the county court of its county for proceedings to assess the cost of such improvement in the manner provided in this act." (1 Starr & Curt. Ann. Stat.—2d ed.—p. 757).

It will be presumed, that the board of trustees did their duty in accordance with the law until the contrary is shown; and, having ordered that court proceedings be instituted, it will be presumed that the report of the commissioners was approved.

It is said, however, that the certificate of the village clerk to the extract from the minutes, as well as the certificate attached to the ordinance introduced in evidence, was defective. The village clerk certifies, in his certifi-

cate, "that the foregoing is a true and correct extract of a part of the minutes of a meeting of the board of trustees of the village of Western Springs, Illinois, held June 18, 1897." To this certificate is attached the corporate seal of the village. Section 10 of article 6 of the City and Village act provides that "the clerk shall keep the corporate seal, to be provided under the direction of the city council or board of trustees, and all papers belonging to the city or village; he shall attend all meetings of the city council or board of trustees, and keep a full record of its proceedings in the journal; and copies of all papers duly filed in his office, and transcripts from the journals and other records and files in his office, certified by him under the corporate seal, shall be evidence in all courts in like manner as if the originals were produced." (1 Starr & Curt. Ann. Stat.—2d ed.—p. 724). The certificate of the village clerk in the case at bar conforms to the requirements of section 10.

Counsel for appellants, however, refer to sections 14 and 16 of chapter 51 of the Revised Statutes, entitled "Evidence." Said section 16 provides, that "the certificate of any such clerk of a court, city, village, town, county, or secretary, clerk, cashier, or other keeper of any such papers, entries, records or ordinances, shall contain a statement that such person is the keeper of the same, and if there is no seal, shall so state." (2 Starr & Curt. Ann. Stat.—2d ed.—p. 1846). The objection made to the present certificate is, that it does not state that the clerk is the keeper of the records of the village, as seems to be required by said section 16. We do not wish to be understood as passing any opinion upon the question whether or not the certificate in the present case is defective in the respect thus indicated. It is sufficient to say that, when upon the trial below, the certified copy of the extract from the minutes of the board of trustees, and the certified copy of the ordinance, were introduced, the objection made thereto by counsel for appellants was gen-

eral in its character. Such objection did not state in what respect the certificate was regarded as defective. If the objection had specified the absence of a statement in the certificate that the clerk was the keeper of the records of the village, the defect might have been remedied by the obtaining of a new certificate from the clerk. An objection of this character to the introduction of the certified copy of a document is too general, as it fails to point out the specific defect insisted upon. (*Payne* v. *Village of South Springfield*, 161 Ill. 285). For this reason, the court below committed no error in admitting the certified copies against the objection made by counsel for appellants.

Some other objections are urged upon our attention by appellants, but they are of a mere technical character, and we do not deem it necessary to discuss them.

After a careful examination of the record, we are of the opinion that the court below committed no error in overruling the objections. Accordingly, the judgment of the county court is affirmed.          *Judgment affirmed.*

Mr. JUSTICE PHILLIPS, dissenting.