THE NORTHWESTERN UNIVERSITY *et al.*

*v.*

THE VILLAGE OF WILMETTE.

*Opinion filed October 23, 1907—Rehearing denied Dec. 5, 1907.*

1. SPECIAL ASSESSMENTS—*what will be regarded as included in estimate.* The cost of re-paving portions of streets torn up in constructing a sewer system and the cost of removing surplus earth from the streets will be regarded as included in the estimated cost of the proposed sewer improvement even though not specifically mentioned, where the estimate contains an itemized estimate of the substantial component parts of the improvement and the ordinance requires all necessary work and labor to be performed in a workmanlike manner.

2. SAME—*approval of work by local improvement board is only tentative.* A provision of an improvement ordinance that the improvement shall be constructed under the direction and supervision and to the satisfaction of the board of local improvements does not render the ordinance void, as vesting in such board arbitrary discretion to determine whether the work had been performed in a workmanlike manner, since, under the statute, the court where the assessment was confirmed must finally determine that question before the improvement can be accepted and paid for.

3. SAME—*when uncertain description of drainage district does not defeat sewer ordinance.* The fact that the description of one boundary of the drainage district created by a sewer ordinance is such that it might be construed either as excluding certain territory from the district or as including it does not defeat the ordinance, where it appears from other parts of the ordinance, which provide for the construction of sewers in such territory, that it was intended to be included within the district.

4. SAME—*when improvement is local and not public.* A system of relief sewers which is confined to a part, only, of the village, and which will convey surface water from the cellars and basements of the property located within the district covered by the system, thereby specially enhancing its value, is a local improvement, which may be made by special assessment, although the improvement may be of some benefit to all the property in the village.

5. SAME—*proviso to section 94 of the Local Improvement act is valid.* The proviso to section 94 of the Local Improvement act, which permits cities, towns and villages having a population of less than one hundred thousand to provide, in the ordinance for a special assessment, for the levy of a sum not exceeding six percentum

of the amount of the assessment to pay the costs of making and collecting the assessment, is not unconstitutional, as being based upon an arbitrary and irrational classification by population.

6. SAME—*when court's finding that ordinance is not unreasonable will be upheld.* The county court's finding, after viewing the premises; that an ordinance for a relief system of sewers was not unreasonable although the village had a sewer system, will be sustained upon appeal notwithstanding the evidence is conflicting, if there is evidence that the sewer system already constructed was inadequate in times of freshets, that at such times the basements of houses were flooded and the water and sewage ran from, instead of into, the catch-basins in the streets.

7. SAME—*what does not render ordinance void for unreasonableness.* The facts that proposed sewers are to be laid in paved streets instead of alleys and that they are to be laid in a circuitous route alleged to be unnecessarily long, do not, of themselves, show such an abuse of the discretion of the municipal authorities with respect to the nature and locality of the improvement as justifies the court in holding the ordinance void for unreasonableness.

8. SAME—*when jurisdiction to construct sewers is not lost by connection of territory with sanitary district.* Jurisdiction of a village to construct sewers in the territory within its corporate limits is not lost by the mere fact that the territory of which the village forms a part has been connected, by statute, with the Sanitary District of Chicago, where nothing has been done in the village by such sanitary district except to locate the route of its main channel, no work having been done or right of way acquired.

9. SAME—*what objection cannot be determined upon application to confirm assessment.* Upon application to confirm a special assessment for a relief system of sewers, an objection that the construction of the sewers, by reason of their being discharged into Lake Michigan, which furnishes the village water supply, may possibly contaminate such water supply and result in a breach of the contract by the village to supply water to a nearby city, cannot be properly determined but must be left to subsequent proceedings if such contingency shall occur.

10. SAME—*whether improvement is a proper one is not a question for the jury.* In a special assessment proceeding the only questions for the jury are whether the property of the objectors is assessed more than it is benefited by the improvement or more than its proportionate share of the cost of the improvement, and all matters of evidence or instructions which seek to bring before the jury the question whether the improvement is a proper one to be made are properly excluded or refused.

230—6

APPEAL from the County Court of Cook county; the Hon. W. L. POND, Judge, presiding.

AUGUSTUS N. GAGE, ELA, GROVER & GRAVES, H. H. C. MILLER, WESTERN STARR, ALDEN, LATHAM & YOUNG, GEORGE A. MASON, KING, LAMB & GAGE, CHARLES J. MICHELET, LEE F. ENGLISH, OTTO GRESHAM, H. S. GEMMILL, WILLIAM H. JOHNSON, and ROBERT W. MILLER, (FRANK R. GROVER, CARL R. LATHAM, and ASAHEL W. GAGE, of counsel,) for appellants.

ROBERT REDFIELD, and A. C. WENBAN, (TOLMAN, REDFIELD & SEXTON, of counsel,) for appellee.

Mr. CHIEF JUSTICE HAND delivered the opinion of the court:

This is an application for judgment of confirmation by the village of Wilmette, in the county court of Cook county, of a special assessment levied by said village to pay the cost of constructing a system of sewers in a portion of the streets of said village to relieve the congested condition of the sewers already in the streets of said village, by furnishing additional means whereby the surface water which accumulates in said village at times of excessive rainfall or freshets may be carried into Lake Michigan, which lies to the east of said village of Wilmette. The appellants appeared and filed objections to confirmation as to their property, and there was a hearing before the court upon the legal questions involved, and afterwards a trial before the court and a jury upon the questions of benefits and whether the property of the appellants was assessed more than its proportionate share of the cost of the improvement, and the findings upon both branches of the case having been against the appellants, a judgment of confirmation was entered against appellants' property, and they have prosecuted an appeal to this court.

*First*—It is objected that the estimate of the cost of the improvement is not sufficient, in this : that it makes no provision for the cost of the re-paving of streets in which the sewers are to be constructed or for the removal of the surplus earth taken from the ditches in which the sewers are to be laid. The estimate of the cost of the improvement is in the following form :

"ESTIMATE COST OF IMPROVEMENT.

| | |
|---|---:|
| 550 Lineal feet of oak plank sewer, at $3 per lineal foot. | $1,650.00 |
| 2090 Lineal feet of concrete sewer of 6 feet internal diameter, at $8.70 per lineal foot. | 18,183.00 |
| 3710 Lineal feet of concrete sewer of 5½ feet internal diameter, at $8.20 per lineal foot. | 30,422.00 |
| 1630 Lineal feet of concrete sewer of 48 inches internal diameter, at $6.70 per lineal foot. | 10,921.00 |
| 1375 Lineal feet of concrete sewer of 45 inches internal diameter, at $6.20 per lineal foot. | 8,525.00 |
| 3250 Lineal feet of concrete sewer of 42 inches internal diameter, at $5.70 per lineal foot. | 18,525.00 |
| 1260 Lineal feet of concrete sewer of 36 inches diameter, at $4.70 per lineal foot. | 5,922.00 |
| 5500 Lineal feet of concrete sewer of 30 inches internal diameter, at $4.20 per lineal foot. | 23,100.00 |
| 4625 Lineal feet of vitrified tile-pipe sewer of 24 inches internal diameter, at $3.20 per lineal foot. | 14,800.00 |
| 1900 Lineal feet of vitrified tile-pipe sewer of 18 inches internal diameter, at $2.70 per lineal foot. | 5,130.00 |
| 1 concrete bulkhead | 300.00 |
| 25 ordinary man-holes, complete, at $30 each. | 750.00 |
| 33 spillway man-holes of 4 feet internal diameter, complete, with conduit, at $40 each. | 1,320.00 |
| 1 spillway man-hole of 6 feet internal diameter, complete, with conduit | 50.00 |
| 31 catch-basins and connections, complete, at $35 each. | 1,085.00 |
| For lawful expenses attending the proceedings for making said improvement and the cost of making and collecting the assessment therefor. | 8,400.00 |
| Total | $149,083.00 |

—and the ordinance provides : "All the necessary labor and work shall be performed in a good and workmanlike manner." We think it clear that the cost of re-paving streets torn up in excavating for the sewers and removing

surplus earth placed upon the streets of the village during the construction of the sewers is included in the estimate of the cost of the improvement, as, obviously, the improvement would not be put in in a good and workmanlike man-. ner if the portions of the streets where sewers were laid were left unpaved and the earth excavated and not used for re-filling remained in the streets as an obstruction to travel. It has repeatedly been held by this court that an itemized statement of the cost of a local improvement is sufficient which contains a statement of the cost of the substantial component elements of the improvement. *Hulbert* v. *City of Chicago,* 213 Ill. 452; *Clark* v. *City of Chicago* 214 id. 318; *Connecticut Mutual Life Ins. Co.* v. *City of Chicago,* 217 id. 352.

It is said, however, that the ordinance provides that the improvement shall be constructed under the direction and supervision and to the satisfaction of the board of local improvements of the village of Wilmette, and that to allow said board to determine whether the work of construction had been performed in a good and workmanlike manner would be to vest a discretion in said board which would render the ordinance void. We do not agree with this contention. The approval of the work by the board of local improvements is only tentative, as before the improvement can be accepted and paid for by the village the court in which the assessment is confirmed must determine that the improvement is constructed substantially according to the improvement ordinance; (*Case* v. *City of Sullivan,* 222 Ill. 56;) and should the board of local improvements determine that the sewers had been put in in a good and workmanlike manner when paved streets remained torn up and obstructed by earth, the approval would be annulled by the court and the improvement would be directed to be completed by replacing the pavement which had been disturbed and removing the earth from the surface of the streets before the construction of the work would be approved and the contract

price directed to be paid to the contractor, so that there is nothing to be feared from the abuse of the power conferred upon the board of local improvements to supervise the construction of the work upon the improvement. The work of constructing sewers in a city or village must necessarily proceed under the supervision of some person or body which represents the city or village, and there is no objection to conferring such power upon the board of local improvements, subject, as it is, to the approval of the court that confirmed the assessment.

*Second*—It is objected that the drainage district established by the improvement ordinance is indefinite and uncertain, in this: that the southern boundary of the district is not properly defined. The ordinance provides that the drainage district shall be composed of "all of the territory lying within the corporate limits of said village west of the following described line," which line commences at Lake Michigan at a point in said village and then runs upon a crooked line to a certain point in the village, from which point it runs south "to the south limits of said village." It appears that the point in the village where the east line of the district terminates upon the south, by reason of a jog in the south line of the village is two hundred feet north of the south line of the village, a short distance west of where said east line terminates upon the south, and the contention is that a strip upon the south side of the village, which is about two hundred feet in width, is not included in the drainage district created by the ordinance. Said strip is west of the line which runs "to the south limits of the village." While it may not be due west, it is west of said line, and said strip, we think, is fairly included within the limits of the drainage district. It also appears that the ordinance provides for the construction of sewers in said strip, which clearly shows that said strip is included in the drainage district. In order to determine the meaning of an ordinance, the ordinance as a whole must be considered.

6

(*McChesney* v. *City of Chicago,* 173 Ill. 75; *Gage* v. *City of Chicago,* 196 id. 512.)  At most, all that can be said of the location of the southern boundary of said district is that it is left uncertain by the ordinance, and the rule is, where an ordinance is uncertain and open to two constructions, the court will adopt the construction which will uphold the validity of the ordinance.  *Berry* v. *City of Chicago,* 192 Ill. 154.

*Third*—It is objected that the improvement proposed to be constructed is not a local improvement and cannot therefore be constructed by special assessment, but must be paid for, if constructed, by general taxation.  The drainage district created by the improvement ordinance is not co-extensive with the limits of the village of Wilmette, which shows conclusively that in the judgment of the village board all the property in the village will not be benefited by the construction of the improvement, and generally this court has held that water mains and sewers placed in the streets of a village or city are local improvements and can be paid for by special assessment of the property benefited.  A local improvement is defined to be "a public improvement which, by reason of its being confined to a locality, enhances the value of adjacent property, as distinguished from benefits diffused by it throughout the municipality."  (*City of Chicago* v. *Blair,* 149 Ill. 310.)  While it may be true that a system of relief sewers like the system in question will be a benefit to all the property in the village, this is not the test.  If the improvement will enhance, specially, the property adjacent to which it is made, the improvement is local within the meaning of the law, and may be paid for by special assessment upon the property benefited.  We think a system of sewers in a city or village which conveys the surface water from the cellars and basements of property located therein, as the evidence shows the sewers will do which are to be located in said village under this improvement ordinance, is a local improvement, which may be paid for by special as-

sessment. In *Ewart* v. *Village of Western Springs*, 180 Ill. 318, on page 323, it was said: "The test whether an improvement is local or not depends upon the question whether or not it specially benefits the property assessed." To the same effect is *Fisher* v. *City of Chicago*, 213 Ill. 268.

*Fourth*—It is objected that the proviso to section 94 of the Local Improvement act, which provides that cities, towns and villages of this State having a population of less than one hundred thousand by the last preceding census, may, in and by the ordinance for the assessment prescribed, provide that a sum not to exceed six per cent of the amount of the assessment shall be applied toward the payment of the cost of making and collecting said assessment, and under which provision $8400 of the present assessment is levied, is unconstitutional and void, as the classification of the cities, towns and villages of the State made in said proviso is arbitrary and is not founded upon any rational basis. The general rule is, that a classification of the cities, towns and villages of the State by population, as a basis for legislation, may be made if such classification is based upon a rational difference of situation or condition found in the municipalities placed in the different classes. (*Douglas* v. *People,* 225 Ill. 536.). In determining the constitutionality of a statute every presumption obtains in favor of the validity of the statute. While this provision has not heretofore expressly been held to be constitutional by this court, special assessments, including the cost of making and collecting the assessment levied under this proviso, have been sustained. (*Gault* v. *Village of Glen Ellyn,* 226 Ill. 520.) In *Chicago Terminal Transfer Railroad Co.* v. *Greer,* 223 Ill. 104, on page 106, it was said: "When the classification on the basis of population has reasonable relation to the purposes and objects of the legislation, the act is not within the constitutional prohibition against local or special laws."

By section 6 of the Local Improvement act, in cities having a population of one hundred thousand or more a board

of local improvements is created, with a president, vice-president, secretary and assistant secretary; while in cities, towns and villages having a population of less than one hundred thousand, certain designated city, town or village officers are, by virtue of their respective offices, members of the board of local improvements in such cities, towns and villages. The boards in cities of one hundred thousand or more are paid a salary and their official duties require their constant attention, and their salaries and expenses, like those of other officers of such cities, are paid from the city treasury; while in cities, towns and villages having a population of less than one hundred thousand the officers composing the board of local improvements are paid their salaries or per diem as officers of said cities, towns or villages, and are not paid as members of the board of local improvements. The legislature has, it will therefore be seen, classified the cities, towns and villages of the State, in section 6, upon the basis of population of one hundred thousand, as well as in the proviso to said section 94 of the Local Improvement act. We are unable to see, if such a classification is valid in section 6, which we think it is, why it is not in the power of the legislature to pass the proviso to section 94. At least we are unable to point out any valid constitutional objection to the classification found in either of said sections of the statute, and cannot, therefore, say said classification is unreasonable and does not rest upon a substantial basis. As we are not entirely clear that the classification is unreasonable, it is our duty to hold the proviso to said section constitutional.

*Fifth*—It is said that the village of Wilmette has a system of sewers in its streets which amply provides all the property in said village with drainage and sewerage facilities, and that the ordinance providing for said improvement is therefore unreasonable, oppressive and void. The judge who tried the case below visited the property assessed, and the evidence upon the question of the ability of the present

system of sewers in said village to accommodate the property in said village was exceedingly conflicting.  The witnesses for appellants testified that the property in said village was amply provided with facilities for the removal of the sewage of the village therefrom, while the witnesses for the appellee testified such was not the fact, but that the streets, the cellars and the basements of the houses and business blocks in said village, in times of heavy rains and freshets, were flooded to a depth of several inches and in places to a depth of several feet; that during such times the water and sewage ran from, instead of into, the catch-basins located upon the streets of said village, and that the present system of sewers in said village was wholly inadequate, and that it was necessary, in order to protect the property and health of the people residing in said village, that the new system provided for by the improvement ordinance in this case should be constructed.  In view of this evidence we cannot disturb the finding of the court below upon the question of the necessity and reasonableness of this improvement.  *Clark* v. *City of Chicago,* 214 Ill. 318.

It is also said the proposed sewers are to be constructed in paved streets instead of the alleys of said village, and that they are to be laid along an unnecessarily circuitous route, which makes the ordinance unreasonable and void. In *Walker* v. *City of Chicago,* 202 Ill. 531, on page 538, this court said: "The city council is clothed with the power to determine whether or not a local improvement is required, also to decide upon its location, nature and character, and when it shall be made and the manner in which it shall be constructed, and the courts have no power to interfere to prevent the construction of a local improvement upon the ground that it is not necessary and that its construction is an unreasonable burden upon the property sought to be assessed, unless the discretion vested in the city council has been abused to such an extent as to render the ordinance providing for the improvement so unreasonable that it may

be declared void." And in *Field* v. *Village of Western Springs,* 181 Ill. 186, on page 191, it was said: "The question of the necessity of a local improvement is by the law committed to the city council, and courts have no right to interfere to prevent such improvement except in cases where it clearly appears that such discretion has been abused. The ground on which courts interfere is that the ordinance is so unreasonable as to render it void."

*Sixth*—It is objected that the territory of which Wilmette forms a part was by act of the legislature which went into effect July 1, 1903, (Hurd's Stat. 1905, p. 368,) connected with the Sanitary District of Chicago, and that the village of Wilmette is, by reason of that fact, without jurisdiction to construct sewers within its corporate limits. Nothing has been done in the village of Wilmette by the Sanitary District of Chicago except to locate the route of its main channel. No right of way has been acquired and no work done, and under the decisions of this court in *Rich* v. *City of Chicago,* 152 Ill. 18, and *Gage* v. *City of Chicago,* 225 id. 218, the contention of appellants that the village of Wilmette has lost jurisdiction over territory located within its corporate limits to construct sewers therein is without force.

*Seventh*—It is objected that the proposed system of sewers, if completed, will contaminate the water supply of the village of Wilmette and that of the city of Evanston, which city is located upon Lake Michigan immediately south of the village of Wilmette, and that thereby a nuisance will be created which would be subject to abatement by injunction. There is no pretense that the amount of sewage which will flow into Lake Michigan from the village of Wilmette will be increased by the proposed improvement. The village of Wilmette, like all the north shore towns, has heretofore poured its sewage into Lake Michigan, and will be forced to continue so to do until relieved by the extension and completion of the improvement now being made by the

Sanitary District of Chicago. The proposed system is so constructed that it can readily and with little expense to the village be connected with the drains of the Sanitary District of Chicago when they are extended to Wilmette. The most that can be said in support of the appellants' contention is, that the outlet into Lake Michigan from the new system of sewers is about twenty-four hundred feet nearer the intake of the water supply of the city of Evanston than the outlet of the present system of sewers. In 1892, and again in 1902, the village of Wilmette made a contract with the city of Evanston to furnish it its water supply. In a modification of those contracts, which was obtained about the time the improvement ordinance involved was passed, the city of Evanston consented that the proposed sewerage system of Wilmette might enter the lake twenty-four hundred feet nearer the intake of its water supply, if the sewers of its new system were so arranged that only surface water would flow into the lake at that point until after a certain quantity of water was flowing through the said sewers, and that the sewage of the village proper should be poured into the lake at the outlet of the old system of sewers, and the contention is made that the new system of sewers is to be so constructed that the probability is a portion of the sewage of the village will enter the lake at the new outlet, which would cause the contamination of the water supply of the city of Evanston and the village of Wilmette and amount to a breach of said contracts. The city of Evanston is not here complaining, and the evidence clearly shows that under no circumstances, after the new system is completed, will more than an infinitesimal portion of the sewage of the village of Wilmette be discharged into the lake at the new outlet, and that the spillways to be constructed are so arranged that for an additional expense of about $100 they can be made to fully comply with the contracts existing between the village of Wilmette and the city of Evanston, and it will be time enough to adjust the contract relations be-

tween said city and village when those questions arise, and we are of the opinion they cannot properly be determined in this proceeding.

In *Walker* v. *City of Aurora,* 140 Ill. 402, which was a special assessment case, it was objected that the waters of Fox river, below Aurora, into which the sewer sought to be constructed would empty, would be contaminated by the sewage. The court said (p. 409): "It is suggested that the sewerage will be a nuisance to the cities and towns on Fox river below Aurora. If this should turn out to be so, and if the discharge of the sewerage into the river should prove to be 'to the injury or prejudice of others,' and if appellee should fail to provide suitable appliances for the purification of the sewerage matter, then there will be ample opportunity to afford relief, upon complaint being made, either on behalf of the public or of those injured or prejudiced."

*Eighth*—A number of questions have been raised upon this record as to the conduct of the trial before the jury, and the rulings of the trial court upon the admission of evidence and the instructions given by that court to the jury have been criticised. But two issues were before the jury, namely, was the appellants' property assessed more than it was benefited by the improvement or more than its proportionate share of the cost of the improvement? The court had held that the improvement was a proper one to be made, and all questions other than those suggested were entirely foreign to the questions being tried before the jury, and all evidence or instructions which sought to bring before the jury, and have them pass upon, the question whether the improvement should be made were properly excluded or refused. We think the court did not commit reversible error in its rulings upon the evidence or in giving or refusing instructions.

A number of other questions have been raised. We think, however, they are without merit.

We have examined this record with care, and although it is a long one, we have found it unusually free from error. The judgment of the county court will be affirmed.

*Judgment affirmed.*