(No. 13622.—Reversed and remanded.)

THE CITY OF SPRINGFIELD, Appellant, vs. THE SPRINGFIELD
CONSOLIDATED RAILWAY COMPANY et al. Appellees.

*Opinion filed December 21, 1920—Rehearing denied Feb. 4, 1921.*

1. SPECIAL ASSESSMENTS—*improvement may be local although it
benefits the public.* Whether or not an improvement will be a bene-
fit to all the property in the city or village is not the test as to
whether it is a local improvement, but if it will enhance specially
the property adjacent to which it is made the improvement is local.

2. SAME—*limited extension of street lighting system is a local
improvement.* An ordinance which provides for the limited exten-
sion of a street lighting system by the construction of poles, wires
and lamps on both sides of certain named streets in a city provides
for a local improvement. (*Ewart* v. *Village of Western Springs,*
180 Ill. 318, followed; *Village of Grand Ridge* v. *Hayes,* 271 id.
431, distinguished.)

3. SAME—*power of city to provide for extensions of municipally
owned utility.* A city may provide for extensions of a municipally
owned utility by special assessment upon property specially bene-
fited; and it is not necessary that the ordinance providing for an
extension shall be approved by a vote of the electors, as the pro-
vision of the Municipal Ownership act with reference to such a
vote does not apply to extensions of a utility already owned and
operated by a city.

4. SAME—*council determines method of paying for improve-
ment.* The method by which a local improvement is to be paid
for is for the determination of the city council, and it may pro-
vide for the payment of one improvement by general taxation, of
another by special taxation and of another by special assessment.

5. SAME—*when a city need not resort to proceeds of previous
bond issue in paying for particular improvement.* A city cannot
levy a special assessment to pay for an improvement which has
already been provided for by the issuing of bonds nor to reimburse
the city for the cost of the improvement, but in determining the
method of paying for a particular improvement the council is not
obliged to resort to the proceeds of a previous bond issue which was
not specially intended for such improvement, even though, under
the general words of the bond ordinance, it might have done so.

APPEAL from the County Court of Sangamon county;
the Hon. JOHN B. WEAVER, Judge, presiding.

296—2

A. D. STEVENS, and ROY M. SEELEY, for appellant.

THOMAS W. QUINLAN, and PHILIP BARTON WARREN, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

The city of Springfield filed a petition for the levy of a special assessment to pay for the construction of a local , improvement. Objections were filed by the Springfield Consolidated Railway Company and other property owners, some of which were overruled and others were sustained, and the court made an order dismissing the petition, from which the city appealed.

The ordinance passed on December 15, 1919, described the proposed improvement as follows: "An ornamental electric street lighting system consisting of 352 cast-iron, single-light, round, fluted Corinthian column, with Corinthian capital, square base standards on concrete bases, together with the necessary wiring, sockets, lamps, globes, cables, transformers, regulators, lightning arresters, switchboards, aerial feed lines completed and connected," to be installed along both sides of certain named streets and to be connected to aerial feeders leading to the city's electric light plant and power station, and to be constructed in accordance with specifications and plans, plat and drawing attached to and made a part of the ordinance. The city, prior to the adoption of the Municipal Ownership act, owned and operated an electric light plant for the purpose of lighting its streets and now also does a commercial lighting business. The lighting system proposed to be constructed is for street lighting purposes, only.

The objections sustained raised, in substance, three questions: First, was the proposed work a local improvement? Second, was the proposed work a public utility as defined by the Municipal Ownership act, and did it require, before

it could be constructed by special assessment, an ordinance to be submitted to the electors and approved by a majority of those voting, as required by sections 3 and 10 of the Municipal Ownership act? Third, had provision been previously made by the city for the cost of constructing the improvement by the issue of bonds authorized by an ordinance adopted September 29, 1919, and approved at an election held November 4, 1919?

*First*—The question of what constitutes a local improvement was recently discussed at some length in the case of *City of Waukegan* v. *DeWolf,* 258 Ill. 374, and the conclusion finally stated, after the consideration of a number of previous decisions, was, that the question "is not determined by the fact that some property in the municipality is benefited to a greater degree than other property, but does depend upon the nature of the improvement and whether the substantial benefits to be derived are local or general in their nature. If its purpose and effect are to improve a locality it is a local improvement although there is incidental benefit to the public, but if the primary purpose and effect are to benefit the public it is not a local improvement although it may incidentally benefit property in a particular locality." In *City of Chicago* v. *Law,* 144 Ill. 569, it was said: "The term 'local improvement' is one which has been recognized as applying in cities and incorporated towns to the opening, grading, paving and otherwise improving streets and alleys, making sidewalks, the construction of drains and sewers and other improvements of this character,—improvements designed to be of benefit to the locality where they are made." As was said in the case of *State* v. *Reis,* 38 Minn. 371, cited in *City of Waukegan* v. *DeWolf, supra,* the only essential elements of a local improvement are those which the term itself implies, viz., that it shall benefit the property on which the cost is assessed in a manner local in its nature and not enjoyed by property, generally, in the city. So it was held in *North-*

*western University* v. *Village of Wilmette,* 230 Ill. 80, that whether or not the improvement will be a benefit to all the property in the village is not the test. If the improvement will enhance specially the property adjacent to which it is made the improvement is a local improvement. It has been uniformly held that although the construction of a general system of waterworks for fire protection and general use is not a local improvement, the laying of water mains for the distribution of water along a particular street for the use of residents is a local improvement which may be paid for by special assessment. (*Village of Morgan Park* v. *Wiswall,* 155 Ill. 262; *Hughes* v. *City of Momence,* 163 id. 535; *O'Neil* v. *People,* 166 id. 561.) In *Ewart* v. *Village of Western Springs,* 180 Ill. 318, the same doctrine was applied to the construction of a plant and system for lighting the streets by electric light, including the power house, generator engine, electric conductors and lamps and necessary appurtenances. After a consideration of the cases in regard to the construction of waterworks by special assessment, it was held that, so far as the plant for lighting the streets by electricity included the power house and electric generator engine, it might be regarded as an improvement of general utility which could not be constructed by special assessment, but that the poles, wires and lamps which are the means of furnishing the necessary light for the protection of the property of citizens constituted a local improvement.

It is argued by counsel for the appellees that in the case of *Village of Grand Ridge* v. *Hayes,* 271 Ill. 431, it was decided that a water distribution system consisting only of mains and public hydrants and making no provision for water for domestic purposes by the abutting owners was not a local improvement, and it was said: "We find no case, and none has been cited, holding that the laying of mains in the street for the protection, alone, of the municipality against fire is a local improvement, and we think,

under the authorities before cited, it must be held that it is not." This language must be considered in connection with the facts in that case, which were, that the ordinance made no provision for house connections with the mains; that in the village, which covered an area of three-quarters of a mile square and had a population of 524, thirty-five fire hydrants were provided for, and, though mains were not to be laid in all the streets, provision was made for laying them in most of the streets and in the principal streets and in such a manner as to afford fire protection to practically all improved property within the village limits. The ordinance did not declare the purpose of the improvement, but the provision for the making of the improvement by special taxation amounted to a declaration by the council that it was a local improvement, though this decision was not conclusive. The protection of property against fire was general throughout the village, and was of general benefit and not of special benefit to contiguous property. The fact that the protection of the property against fire extended throughout the village made the improvement of general benefit to the whole village, and this fact, together with the lack of provision for house connections or private use of the water, eliminated the question of special benefit to contiguous property. If the water mains and hydrants had covered but a small part of the village, as was the case with the 352 street lights provided for in the ordinance under consideration, then a different question would have been presented.

Counsel for appellees argue, in view of the language used in *Village of Grand Ridge* v. *Hayes, supra,* that the decision in *Ewart* v. *Village of Western Springs, supra,* was made with reference only to an electric distribution system which provided for the use of the electricity by abutting owners for private purposes. That could not have been the view of the court because the *Ewart case* was decided in 1899, before the passage of the Municipal Own-

ership act, when a municipality had no power to furnish electric light to its inhabitants for their private use but could only use it for lighting its own streets. The extension of the municipal lighting system described in the ordinance comes within the meaning of a local improvement.

*Second*—The term "public utility," by section 2 of the Municipal Ownership act, "means and includes any plant, equipment or property * * * used or to be used * * * for the production, storage, transmission, sale, delivery, or furnishing of coal, heat, light, power, water." Section 3 provides: "No city shall proceed to acquire or construct any public utility under the provisions of this act until an ordinance of the city council providing therefor has been duly passed and submitted to the electors of such city and approved by a majority of those voting thereon. Such ordinance shall set forth the action proposed, shall describe the plant, equipment and property proposed to be acquired or constructed, and shall provide for the issue of bonds, mortgage certificates or special assessment bonds, as hereinafter authorized." Section 4 is as follows: "No city shall itself proceed to operate any such public utility for the use or benefit of private consumers or users, for hire or charge for such compensation [consumption] or use, unless the proposition to operate shall first have been submitted to the electors of the city as a separate proposition and approved by a majority of those voting thereon; but any city may, without such submission and approval, sell electricity for heat, light or power within or without the limits of the city, generated from any electric lighting plant owned and operated by the city for the city's own use, and may without such submission and approval sell water within and without the city from any water plant owned and operated by the city: *Provided,* that the act of any city or village which has heretofore constructed, maintained, operated, controlled or leased any public utility and furnished and sold the product or service thereof for private use, is

hereby declared to be legal and valid, anything in any law of the State to the contrary notwithstanding."

The electric light plant which the city owned and operated prior to the adoption of the Municipal Ownership act, including the power house, steam boilers, electric generators, all auxiliary equipment, transmission lines, transformers, poles, service wires, meters, switch-boards, and all the appliances and equipment used in the production, transmission and furnishing of electricity for light, heat or power, was by that act declared to be a public utility. The construction, maintenance and operation of such utility before the passage of the Municipal Ownership act was declared by that act to be legal and valid, and the city was authorized by section 4 to sell electricity for heat, light or power, within or without the city, generated from that plant, without the submission of an ordinance for that purpose and its approval by a vote of the electors of the city. Before the passage of the act the city had the power to extend the service from its plant by special assessment of the property benefited by such extension. (*Ewart* v. *Village of Western Springs, supra.*) The Municipal Ownership act did not take that power from the city. The improvement provided for by the ordinance of December 15 was not the acquirement or construction of a public utility. It was an extension of the public utility already owned by the city and was to be a part of that utility. When it should be constructed the city would not own and operate two utilities but only the one utility which it had previously owned, extended by the addition of the new lines. It would be an unreasonable construction of section 3 to hold that every time the city constructs a new line or purchases some new equipment or appliances to be used in connection with its plant it acquires a new utility, and that every extension, even of a single block, would require an ordinance approved by a vote of the electors. Under this construction, if the city extended the service from its plant it would soon be the owner of

numerous public utilities. All the various lines, equipment and property used in connection with the power house and electric generators of the city constitute but one plant and one utility. We agree with the statement of the appellees in their brief that the city is now operating a single and indivisible plant under the authority and provisions of the Municipal Ownership act, though since the passage of that act it has acquired additional property which it has merged with its property previously owned. So when the improvement provided for in this ordinance is constructed the city will still own and operate a single, indivisible utility. It was not necessary that the ordinance for the improvement should be submitted to the electors and approved by them.

*Third*—On September 29, 1919, the city council passed an ordinance "providing for the enlargement, extension and improvement of the existing municipal electric light and power plant and system for the purpose of furnishing the city and its inhabitants with electric light, heat and power and for the issuance of bonds of the city to pay the cost thereof, and for the submission to the electors of the city of the propositions for the approval of this ordinance for making the enlargements, extensions and improvements herein provided for, for operating the municipal electric light and power plant and system thus enlarged, extended and improved, and for issuing the bonds of the city in the principal sum of $400,000 to pay the cost of such enlargements, extensions and improvements."

It is contended by the appellees that this ordinance makes provision for the improvement included in the ordinance of December 15, 1919, and that the latter ordinance, purporting to levy special assessments upon private property for the same improvement, is illegal, void and beyond the power of the council to enact. The appellant insists that the ordinance of September 29 does not contemplate the construction of a street lighting system or embrace the local improvement mentioned in the ordinance of December 15.

Section 1 of the ordinance provided: "That the existing municipal electric light and power plant and system shall be and the same is hereby. authorized and directed to be enlarged, extended and improved by the construction of an additional power plant building; the acquisition and installation of steam boilers, electric generator and all necessary auxiliary equipment sufficient to provide at least 2500 K. V. A. additional capacity; the construction of an additional high-voltage transmission line from the power plant to the sub-station within the city limits, together with the acquisition and installation of transformers, lightning arresters, switch-boards and other equipment necessary to make a complete operating line having a capacity of at least 2500 K. V. A.; the extension of the overhead and underground distribution system, including transformers, service wires, meters, switch-boards and all appliances and equipment necessary to make a complete system."

The appellant contends that the addition to the plant and equipment of the municipal electric system provided for by this ordinance embraces no street light equipment but merely such equipment as was necessary to make general distribution throughout the city so that the equipment devoted to a specific use could be supplied with the current. The ordinance makes no reference to any particular locality or any special manner in which the additions to the plant and equipment are to be used, except that they "shall be operated by the city for the purpose of furnishing the city and its inhabitants with electric current for light, heat and power in such manner and under such regulations as may be authorized or prescribed by or pursuant to the authority of the city council consistent with the laws of the State of Illinois."

Whether an electric light system of the character described in the ordinance of December 15 could be constructed under this ordinance we need not inquire. The method by which a local improvement is to be paid for is

for the determination of the council. It may provide for the payment for one by general taxation, for another by special taxation, and for another by special assessment. This particular improvement is not described in the ordinance of September 29. In the ordinance which was passed on April 19, 1920, authorizing the issuance of the bonds provided for in the ordinance of September 29, it is recited that the plans and specifications for the extension, enlargement and improvement of the existing municipal electric light and power plant and system as provided in the ordinance of September 29, 1919, and authorized and approved by the electors, have been prepared and have been submitted to and approved by the council and are now on file in the office of the city clerk. These plans and specifications were not introduced in evidence on the hearing of the objections, and it does not appear that they included any part of the improvement provided for by the ordinance of December 15, 1919. If the proceeds of this issue of bonds might have been used for the purpose of constructing a local improvement such as the one in question here, there is no evidence that it was ever intended to use any part of such proceeds for the construction of this particular improvement. If they had been so appropriated, of course the city would have no authority to levy a special assessment to pay for the improvement again or to reimburse the city for the cost of the improvement. Even though by the ordinance of September 29 the city had a fund which could be used for the making of a general or local improvement, it was not bound to use that fund for the making of any particular local improvement, and was not excluded from exercising its discretion as to whether any particular improvement should be made from such fund or by special assessment or by special taxation.

The objections of the appellees which were sustained should have been overruled. The judgment will be reversed and the cause remanded.    *Reversed and remanded.*